

**FILED**
Sep 28 2015, 9:19 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Richard Wayne Greeson | Elizabeth J. Wysong Berg |
| Connersville, Indiana | Goodin Abernathy, LLP |
| | Indianapolis, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael R. Pike, and Chassidy L. Pike, | September 28, 2015 |
| *Appellants-Plaintiffs*, | Court of Appeals Case No. 16A05-1501-CT-27 |
| v. | Appeal from the Decatur Circuit Court |
| Conestoga Title Insurance Co., | The Honorable John A. Westhafer, Judge |
| *Appellee-Defendant*. | Trial Court Cause No. 16C01-0902-CT-44 |

**Brown, Judge.**

Michael and Chassidy Pike appeal the trial court's grant of summary judgment in favor of Conestoga Title Insurance Company. The Pikes raise two issues, which we consolidate and restate as whether the trial court erred in granting Conestoga's summary judgment motion. We affirm.

## Facts and Procedural History

On December 31, 2003, the Pikes purchased a home in Greensburg for $82,000. They secured the loan used to purchase the house by executing a mortgage in favor of First Franklin Financial Corporation. Conestoga issued a title insurance policy to the Pikes on January 13, 2004. The policy provides in relevant part as follows:

> 3. Notice of Claim to be Given to Insured Claimant
>
> The insured shall notify the company promptly in writing . . . in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title of the estate or interest, as insured, and which might cause loss or damage for which the Company may be liable by virtue of policy . . . . If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by failure and then only to the extent of the prejudice.

Appellant's Appendix at 176. The policy defines knowledge as "actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records . . . ." *Id.*

[3] First Franklin subsequently sold and assigned the Pikes' mortgage to Wells Fargo Bank, which failed to record the assignment in the Decatur County Recorder's Office. Wells Fargo contracted with HomEq Servicing to service the mortgage and manage the escrow account from which taxes on the property were to be paid.

[4] In June 2006, Connersville attorney Richard Wayne Greeson sent the Pikes and First Franklin a legal notice explaining that Shammah Investments, LLC, had purchased the Pikes' home for $233.40 at an October 2005 tax sale for the nonpayment of real estate taxes. Greeson, his wife, and another family member owned Shammah, which was in the business of purchasing property at tax sales. The legal notice advised the Pikes that they could redeem their property by paying the tax bill and fees by the October 6, 2006 redemption period deadline. The Pikes immediately contacted HomEq, whose representative informed them that their taxes had been paid and that they could ignore the notice. The Pikes did not notify Conestoga.

[5] In November, 2006, following the expiration of the redemption period, the Pikes received a second notice of the tax sale, which advised them that Windgate LLC intended to seek a tax deed on their property. The notice also advised the Pikes that they had thirty days to file a written objection to the petition with the court. Greeson, who owned Windgate with his wife, prepared this notice as well. The Pikes again contacted HomEq and were told that all the taxes due on the home had been paid and that they could ignore the notice. The Pikes did not notify Conestoga.

[6] On November 29, 2006, the Decatur Circuit Court ordered the County Auditor to execute and deliver a tax deed on the Pikes' home to Windgate Properties. Three months later, in February 2007, the Pikes were notified that their home had been deeded out of their name and that they no longer owned it.

[7] The Pikes retained attorney Greeson to represent them in a claim against Conestoga, HomEq, and Wells Fargo and subsequently learned that it was a May 23, 2003, special assessment that had remained unpaid and led to the sale of their home for a tax delinquency.[1] In April 2007, Greeson sent a letter to Conestoga advising the title company that the Pikes had lost their home because Conestoga had failed to include in its title search the special assessment that was recorded in May 2003. Greeson further explained that the Pikes had not received any delinquency notices after they purchased the property because all tax notices had been sent to the mortgagee. Greeson advised Conestoga that the Pikes had suffered a total loss of their $82,000 property as well as $27,333 in attorney fees.

[8] Two months later, Conestoga responded that it had completed its research and review on the Pikes' claim. Specifically, Conestoga pointed out that the tax bills were being sent directly to the Pikes, and, in fact, Greeson, as the

---

[1] The Pikes signed an Informed Consent for Attorney Representation in connection with Greeson's representation of them in this matter wherein they averred as follows: "We are fully informed that attorney Wayne Greeson represented and has an ownership interest in Windgate Properties, LLC, the company that obtained the tax deed on our property." Appellant's Appendix at 257. They further averred that they were fully satisfied with Greeson's representation of their legal interests in their claim.

registered agent for both the LLC that purchased the Pikes' home and the LLC that held current title to the property, could not claim that the Pikes did not have notice of the sale or redemption where he was the attorney of record who served the notices on them. Conestoga further explained that it was denying the Pikes' claim because they violated the title insurance policy by failing to notify Conestoga when they received the first notice of the tax sale and then again when they received the second notice of the tax sale deed.

[9] In April 2009, the Pikes filed an amended complaint against Conestoga, HomEq, and Wells Fargo. The counts against Conestoga alleged breach of contract as well as breach of the insurer's duty of good faith and fair dealing. Specifically, the Pikes alleged that Conestoga failed to "uncover the Special Assessment and wrongfully failed and refused to satisfy the Pikes' claim." Appellant's Appendix at 25. Conestoga responded to the Pikes' complaint with a summary judgment motion wherein it argued that the Pikes voided their title insurance policy when they failed to notify Conestoga about the tax sale and that it did not act in bad faith.

[10] Following a hearing, the trial court granted Conestoga's summary judgment motion on December 13, 2010. Specifically, the trial court concluded as follows:

> IT IS THEREFORE ORDERED that Defendant, Conestoga Title Insurance Co., is entitled to entry of judgment that Michael and Chassidy Pike are not entitled to any coverage under their owners' title insurance policy due to the failure of the Pikes to provide Conestoga with reasonable notice and Conestoga's

resulting prejudice and that Conestoga did not act in bad faith in the handling and decision to deny the Pike's claim.

*Id*. at 14.

[11] The parties filed a Joint Stipulation of Dismissal with Prejudice of Bank Defendants in December 2014, and the trial court issued an order dismissing the bank defendants and disposing of all claims as to all parties. The Pikes appeal the trial court's grant of summary judgment in favor of Conestoga.

## *Discussion*

[12] The issue is whether the trial court erred in granting summary judgment in favor of Conestoga. We review an appeal of a trial court's ruling on a summary judgment motion using the same standard applicable in the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is appropriate only if the designated evidence reveals no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Perdue v. Gargano*, 964 N.E.2d 825, 831 (Ind. 2012). All facts and reasonable inferences drawn from the evidence designated by the parties must be construed in the light most favorable to the non-moving party. *Id.*

[13] Generally the interpretation of an insurance policy presents a question of law and is thus appropriate for summary judgment. *Safe Auto Ins. Co. v. Enterprise Leasing Co. of Indianapolis, Inc.*, 889 N.E.2d 392, 304 (Ind. Ct. App. 2008), *reh'g denied*. A contract for insurance is subject to the same rules of interpretation as are other contracts. *Id.* If the language in the insurance policy is clear and

unambiguous, then it should be given its plain and ordinary meaning. *Id.* Further, although findings and conclusions by the trial court are not required, they offer valuable insight into the rationale for the judgment and facilitate our review. *Spudich v. N. Ind. Pub. Serv. Co.,* 745 N.E.2d 281, 290 (Ind. Ct. App. 2001), *reh'g denied, trans. denied*.

[14] The trial court explained that it granted summary judgment in favor of Conestoga because the Pikes failed to provide Conestoga with notice of their claim as required by the insurance policy and Conestoga did not act in bad faith in denying it. The notice requirement is material and of the essence in insurance contracts. *Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 277 (Ind. Ct. App. 1999). Therefore, the duty to notify an insurance company of potential liability is a condition precedent to the company's liability to the insured. *Id.* Noncompliance with notice of claim provisions resulting in an unreasonable delay triggers a presumption of prejudice to the insured's ability to prepare an adequate defense. *Id.* at 278.

[15] The notice provision in this case requires the insured to notify Conestoga promptly in writing "in case knowledge shall come to insured . . . of any claim of title or interest which is adverse to the title of the estate or interest . . . and which might cause loss of damage for which the Company might be liable by virtue of the policy." Appellant's Appendix at 176. The policy defines knowledge as actual knowledge.

[16] In this case, the designated evidence reveals that in June 2006, the Pikes received a legal notice advising them that their home had been purchased at a tax sale for the nonpayment of real estate taxes and that they had until October 6, 2006 to redeem their property. Again, in November 2006, the Pikes received a second notice of the tax sale advising them that Windgate intended to seek a tax deed on their property. The notice also advised them that they had thirty days to file a written objection with the court.

[17] Despite these two notices which were given directly to the Pikes and advised them of interests adverse to the title of their estate which might cause loss for the insurance company, the Pikes failed to promptly notify Conestoga. The Pikes clearly failed to comply with the notice provision of their Conestoga policy.

[18] To the extent the Pikes argue that they did not have actual knowledge of their claim until they hired Greeson in April 2007 and discovered that the tax deficiency resulted from the failure to pay a 2003 special assessment, we note that the contract requires no such specificity. Rather, the contract requires only notice of an adverse claim that might cause the insurance company to be liable. The Pikes had such knowledge as early as June 2006 and then again in November 2006. Under the terms of the policy, the Pikes were required to notify Conestoga at those times.

[19] We further note that to the extent the Pikes argue that they did not have knowledge of their claim because they are unsophisticated, we note that

insureds have a duty to read and to know the contents of their insurance policies. *See Safe Auto*, 889 N.E.2d at 397.

## *Conclusion*

[20] For the foregoing reasons, we affirm the trial court's order entering summary judgment in favor of Conestoga.

[21] Affirmed.

Riley, J., and Altice, J., concur.