# ED. WINKLER & SON, INC. ET AL. *v.* THE OHIO CASUALTY INSURANCE COMPANY ET. AL.

[No. 896, September Term, 1981.]

*Decided March 5, 1982.*

The cause was argued before GILBERT, C. J., and MOYLAN and WILNER, JJ.

*Joseph P. Rieger* for appellants.

*John E. Mudd,* with whom were *Douglas W. Biser* and *Mudd & Harrison* on the brief, for appellees.

WILNER, J., delivered the opinion of the Court.

We are concerned here with a question of insurance coverage. Is appellee, Ohio Casualty Insurance Co., obliged under its Special Multi-Peril Policy to defend appellant, its insured,[1] in an action brought against appellant by Nina and Benjamin Cromwell? The Circuit Court for Baltimore County answered in the negative and we shall do likewise.

The Cromwells sued appellant for slander, malicious prosecution, and false arrest. They alleged in their Declaration that, while a customer in appellant's jewelry store on October 30, 1980, Mrs. Cromwell was wrongfully accused by appellant of stealing a $600 diamond and substituting for it a $20 zircon. When Mrs. Cromwell denied the accusation and refused to "replace" the diamond, appellant called the police, repeated and embellished his accusation, and caused Mrs. Cromwell to be arrested. As a result of the arrest, it was claimed, Mrs. Cromwell was detained for several hours in a police station, questioned, and strip-searched. Subsequently, according to the Declaration, it was shown that the alleged zircon was indeed a real diamond, that Mrs. Cromwell had done nothing wrong, and that appellant ultimately "decided not to prosecute."

In support of her action for damages, Mrs. Cromwell claimed "pecuniary loss, humiliation, embarrassment, indignity, mental anguish, fright, emotional distress, physical trauma, nervous upset and damage to reputation" and the Cromwells together claimed "loss of consortium, society, affection and assistance of the other."

When presented with the Cromwells' "suit papers," appellant demanded that appellee defend the action in accordance with its policy, and, when it declined to do so, appellant brought this proceeding for declaratory judgment. The court, as noted, declared that the policy did not afford coverage for

---

1. There are two appellants — Ed. Winkler & Son, Inc., the named insured, and Edward P. Winkler, the president of the corporation. As their respective interests in this proceeding are essentially the same and as appellee conceded in its answer to their bill for declaratory judgment that both are insureds under the policy, we shall refer to them collectively in the singular. The tortious acts complained of by the Cromwells were allegedly committed by Mr. Winkler, as an agent and employee of the corporation.

this type of action, and thus decided that appellee was not obliged to defend appellant or to pay any resulting judgment.

In *St. Paul Fire & Marine Insurance Company v. Pryseski,* 292 Md. 187 (1981), the Court of Appeals instructed us that:

> "In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit. At times these two questions involve separate and distinct matters, and at other times they are intertwined, perhaps involving an identical issue." *Id.* at 193.

We start with the first question — what coverage is afforded by the policy?

The relevant policy language here is as follows:

> "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as *damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence,* and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expe-

dient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements." (Emphasis supplied.)

The key phrase, in terms of this dispute, is that which we have underscored: "damages because of bodily injury . . . to which this insurance applies, caused by an occurrence. . . ." An "occurrence" is defined in the policy as *"an accident,* including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the *insured."* (Emphasis supplied.)

The word "accident," unfortunately, is not defined in the policy. The term "bodily injury" is so defined, however; it means "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom."

It is apparent from these provisions that coverage is afforded in this case if, from the allegations in the Cromwells' Declaration, it appears that (1) any of the injuries claimed by the Cromwells are "bodily injuries" or "property damage," and (2) such injuries were "caused by an occurrence." The first of these is not really in doubt; appellee does not dispute that at least some of the injuries claimed by the Cromwells amount to "bodily injuries." The real issue is the second one, and, given the definition of "occurrence" and the lack of any suggestion that the Cromwells' injuries arose from any "continuous or repeated exposure to conditions," it boils down in the end to whether the injuries were caused by an "accident." Coverage here depends on the interpretation of the word "accident," in light of the allegations in the Declaration.

This is the type of issue that is "intertwined" between the two considerations mentioned by the Court in *Pryseski;* it involves both an interpretation of policy language and a careful look at the tort action. We proceed with this synthesis by restating the general principle laid down in

*Brohawn v. Transamerica Insurance Co.,* 276 Md. 396, 407-08 (1975):

> "The obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. . . . [citations omitted] Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy." (Emphasis in the original.)

The question, in other words, is whether the acts and actions charged to appellant by the Cromwells, from which their injuries allegedly arose, can clearly or *potentially* be regarded as an "accident."

Maryland follows the rule that, in construing the language of an insurance policy, the words used "are to be given their customary and normal meanings." *Harleysville Mutual Casualty Company v. Harris & Brooks, Inc.,* 248 Md. 148, 151 (1967). Thus, to determine what is meant by an "accident," we look first to a dictionary, as we did in *Simkins Industries, Inc. v. Lexington Insurance Company,* 42 Md. App. 396, cert. den. 285 Md. 730 (1979), and as the Court of Appeals did in *Harleysville Mutual Casualty Company.* We find there (Webster's Twentieth Century Dictionary) that an "accident" is "a happening; an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." The key ingredient is not merely a "happening," for that would make every act or event an "accident"; rather, it is the unexpected nature of the event or its aftermath. 7A Appleman, *Insurance Law and Practice,* § 4492 (Berdal ed. 1979), states;

> "An accident is anything that happens or is the result of that which is unanticipated and takes

place without the insured's foresight or anticipation. . . . *As used in insurance policies it is simply an undesigned, sudden, and unexpected event,* usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force, but it does not mean the natural and ordinary consequences of a negligent act." (Emphasis supplied.)

With this focus on the expectability of the event or its consequences we can avoid the need to consider appellant's subjective state of mind. There is no express disclaimer in the policy for acts "intentionally" done, and so it would make no difference whether appellant's acts were prompted by malice or negligence, or some other motivating force. The only relevant consideration is whether, according to the Declaration, the chain of events leading to the injuries complained of was set in motion and followed a course consciously devised and controlled by appellant without the unexpected intervention of any third person or extrinsic force. *Compare Pryseski, supra,* where the Court discussed the *undefined* word "occurrence" in the context of intentional conduct.

The Declaration plainly and unmistakably alleges that the injuries complained of by the Cromwells were the natural consequence of appellant's charging Mrs. Cromwell with theft and causing her to be arrested. The implication is clear that, whether prompted by negligence or malice, (1) appellant's acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within appellant's foresight and anticipation. The Declaration permits no suggestion that it was by *chance* that appellant accused Mrs. Cromwell of being a thief, or that it was either by lack of design on his part or the unanticipated intervention of any third party or extrinsic force that she was arrested, or that he could have failed to anticipate that, once arrested, she would be subjected to the embarrassment, deprivation of liberty, and other indignities claimed by her.

In short, if the events and consequences occurred as alleged in the Declaration, the Cromwells' injuries cannot be said to have been caused by "an accident," or, thusly, by "an occurrence."

Appellant seeks support for his position from *Levy v. Duclaux,* 324 So.2d 1 (La.App. 1975), *cert. den.* 328 So.2d 887-88 (La. 1976), but we find that case to be unpersuasive. The court there did construe similar policy language as providing coverage where the insured shopowner was sued by a customer whom he had wrongfully accused of shoplifting. However, it appears that the court reached that conclusion merely upon a finding that the injuries claimed by the customer constituted "bodily injuries." The court never addressed the more fundamental question of whether those injuries arose from an "occurrence"; at least the opinion does not reflect any such consideration. *Compare American Home Assurance Company v. Osbourn,* 47 Md. App. 73 (1980).

Upon the record before us, it is clear that the acts complained of in the tort suit did not constitute an "accident" or "occurrence," and accordingly, there is not even the "potentiality" of coverage under the policy.

*Judgment affirmed; appellant to pay the costs.*