**MICROVOTE CORPORATION,**
Appellant–Plaintiff,

v.

**GRE INSURANCE GROUP, d/b/a**
**Midwestern Indemnity,**
Appellee–Defendant.

No. 49A04–0205–CV–202.

Court of Appeals of Indiana.

Nov. 27, 2002.

John R. Price, John R. Price & Associates, Indianapolis, IN, Attorney for Appellant.

Joseph M. Dietz, Meils, Thompson & Dietz, Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Microvote Corporation ("Microvote") appeals the trial court's grant of summary judgment in favor of GRE Insurance Group d/b/a Midwestern Indemnity Company ("GRE"), finding that the insurance policy exclusions applied.

We affirm.

### ISSUE

Whether the trial court erroneously granted GRE's motion for summary judgment.

### FACTS

The undisputed facts are that Microvote distributes electronic voting machines and has its principal place of business in Indianapolis, Indiana. GRE sells casualty and property insurance in Indiana. During the relevant times of this dispute, a commercial property and general liability insurance policy was issued for valuable consideration by GRE to Microvote providing a $1 million limit on liability.

On May 16, 1994, Microvote, as principal, and Westchester Fire Insurance Company, Inc. ("Westchester"), as surety, paid Montgomery County, Pennsylvania ("the County") a $1.9 million performance bond for the delivery and set-up of Direct Electronic Voting Units ("voting machines"). On May 24, 1994, the County executed a contract with Microvote to purchase 900 voting machines. The voting machines were subsequently delivered and the

County paid Microvote approximately $3.8 million.

During general and primary elections in 1994 through 1996, the voting machines malfunctioned. On October 10, 1997, the County filed suit in the United States District Court for the Eastern District of Pennsylvania against Microvote and Carson Manufacturing Company, Inc. ("Carson") alleging negligence, breach of implied warranty, and fraud. In the same suit, the County also alleged Microvote was liable for breach of contract and wrongful use of a civil proceeding.[1] Further, the County alleged that Westchester was liable to it under the terms of the performance bond.

After Microvote was served with a copy of the complaint, Microvote requested GRE to provide insurance coverage and provide for legal defense against the County's complaint. In a letter dated November 25, 1997, GRE informed Microvote that it would not provide insurance coverage because the alleged defects to the voting machines fell outside the coverage of the insurance policy. As a result, GRE did not provide for Microvote's legal defense.

Meanwhile, back in Pennsylvania, Microvote, Carson, and Westchester filed motions for summary judgment seeking dismissal of the County's claims. On February 3, 2000, the district court denied the defendants' summary judgment motions as to the County's breach of implied warranty, breach of contract, and fraud claims. The County's remaining claims were dismissed.

On October 16, 2000, Microvote filed a complaint in Marion County, Indiana

1. Microvote had previously filed suit against the County alleging that it had failed to pay for loaner voting machines pursuant to an oral agreement. However, that suit was dismissed pursuant to Pennsylvania law because the alleged contract was not in writing and for the lack of statutory authority supporting the claim. *Microvote Corp. v. Montgomery County;* 1996 WL 548145 (E.D.Pa.1996) *aff'd* 124 F.3d 187 (3d Cir.1997).

against GRE alleging that it had wrongfully denied insurance coverage. Microvote asked the trial court to award it damages to compensate for past, present, and future costs to be incurred as a result of the Pennsylvania suit.

In November 2000, the Pennsylvania suit was heard before a jury and Microvote provided for its own defense. The jury rendered a verdict in favor of the County on its breach of implied warranties claim and awarded damages in the amount of $1,048,500.

Back in Indiana, Microvote filed a motion for summary judgment on April 30, 2001. Microvote argued that GRE had a duty to defend and indemnify the damages awarded by the jury in Pennsylvania. GRE filed its motion for summary judgment on August 2, 2001, arguing that it did not have a duty to defend because Microvote's policy did not cover the defective voting machines.

On March 8, 2002, the Indiana trial court granted GRE's motion for summary judgment. The trial court found, as a matter of law, that because the policy clearly excluded the defective voting machines from coverage as property damage, GRE had no duty to defend or indemnify the damages awarded by the Pennsylvania jury.

## DECISION

Microvote appeals the trial court's order granting GRE's motion for summary judgment. Specifically, Microvote argues that GRE had a duty to defend it against the County's suit and indemnify the Pennsylvania jury verdict. In addition, Microvote argues that because GRE failed to (1) file a declaratory judgment action to determine its duty to defend; or (2) defend under a reservation of rights, GRE is collaterally estopped from raising policy defenses in the instant action.

The purpose of summary judgment is to put an end to litigation when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Auto–Owners Ins. Co. v. Cox*, 731 N.E.2d 465 (Ind.Ct. App.2000).

> Summary judgment based upon construction of an insurance contract is a determination, as a matter of law, that the contract is unambiguous and that it is unnecessary to resort to rules of contract construction to ascertain the contract's meaning. The provisions of an insurance contract are subject to the same rules of construction as other contracts, and the construction of a written contract is a question of law for which summary judgment is particularly appropriate.

*Erie Ins. Co. v. American Painting Co.*, 678 N.E.2d 844, 845 (Ind.Ct.App.1997), *trans. denied.*

Generally, an "insurer, after making an independent determination that it has no duty to defend, must protect its interest [either] by filing a declaratory judgment action for a judicial determination of its obligations under the policy or defend its insured under a reservation of rights." *Employers Ins. of Wausau v. RFC*, 716 N.E.2d 1015, 1025 (Ind.Ct.App. 1999), *trans. denied.* However, we have held that an insurance company may investigate the underlying factual basis of a complaint and refuse to defend its insured, but it does so at its own peril. *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100 (Ind. Ct.App.1980); *Employers Ins. of Wausau*, 716 N.E.2d at 1015. This view is consistent with the "modern concept of notice pleading in which specific allegations are not necessary." *Mallon*, 409 N.E.2d at 1105.

■ In this case, Microvote notified GRE of the County's complaint and requested that GRE defend and indemnify Microvote against the County's suit. However, GRE investigated the factual basis of the complaint and notified Microvote that the defective voting machines were not covered as "property damage" under the insurance policy; GRE determined that it did not have a duty to defend Microvote. We agree.

In Microvote's commercial property and general liability insurance policy, GRE promises that it will provide insurance for " 'bodily injury' and 'property damage' which occurs during the policy period." Microvote's App. 50. However, the insurance policy contains the following exclusions:[2]

2. Exclusions

*    *    *    *    *    *

k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "product-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage to Impaired Property or Property Not Physically Injured.

"Property damage" to "impaired property" or property that has not been physically injured, arising out of

(1) A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

GRE's App. 7–8.

■ Based on the plain meaning of the exclusions in the insurance policy, we find that GRE properly determined that the defective voting machines were excluded from coverage. The Pennsylvania jury found that Microvote had supplied defective voting machines to the County in violation of the implied warranties of merchantability and fitness for a particular purpose.[3] As the insurance contract clear-

2. We note that Microvote's appendix included a partial copy of the insurance policy. However, it did not include the relevant exclusions. We admonish Microvote's counsel that Indiana Appellate Rule 50(A)(2)(g) states that the appellant's appendix "*shall* contain a table of contents and copies of ... essential portions of a contract, ... [:]" (emphasis added). As a result, we rely on the exclusions as cited in the trial court's final order granting summary judgment.

3. The implied warranty of merchantability as set forth in section 2314 of the Pennsylvania Commercial Code provides a warranty that goods shall be merchantable in a contract for their sale if the seller is a merchant with respect to goods of that kind. In Pennsylvania, an implied warranty of fitness for a particular purpose is breached when a seller, on whose skill and judgment a buyer relies and who has reason to know, at the time of contracting, the particular purpose for which the goods are required, fails to provide goods that perform to the specific use contemplated by the buyer. *Gall v. Allegheny Cty. Health Dept.*, 521 Pa. 68, 555 A.2d 786 (1989).

ly excludes defective products from coverage under the policy, GRE correctly determined that coverage did not extend to the Pennsylvania jury's award. *See Commercial Union Ins. v. Moore,* 663 N.E.2d 179 (Ind.Ct.App.1996), *trans. denied.* (unambiguous insurance contract is given its plain and ordinary meaning). In this case, GRE neither had a duty to defend nor was it necessary to seek a declaratory judgment or to proceed under a reservation of rights. The trial court did not err in granting summary judgment in favor of GRE.

Affirmed.

KIRSCH, J., concurs.

BROOK, C.J., concurs in result with separate opinion.

BROOK, Chief Judge, concurring in result.

Under its policy with Microvote, GRE agreed to "pay those sums that [Microvote] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies[,]" subject to certain exclusions. Appellant's App. at 50. The majority lists several of these exclusions and ultimately concludes that the policy "clearly excludes defective products from coverage[.]" Slip op. at 7. The majority does not specify on which exclusion it relies, but I presume that it must have relied on paragraph "m", which excludes coverage for property damage to impaired property or property not physically injured arising out of a defect in Microvote's products.

There is no indication, however, that any property was damaged, or that any property damage arose out of a defect in Microvote's products. Quite simply, the voting machines just did not work. Given that the damages at issue were not due to either bodily injury or property damage, I believe that we need not resort to the policy exclusions to affirm the trial court's grant of summary judgment in favor of GRE.