**JIM BARNA LOG SYSTEMS MIDWEST, INC., and Peter Rosi, Appellants–Plaintiffs,**

v.

**GENERAL CASUALTY INSURANCE COMPANY OF WISCONSIN, and Hoosier Insurance Company, Appellees–Defendants.**

No. 91A02–0211–CV–961.

Court of Appeals of Indiana.

July 17, 2003.

Jerome L. Withered, Withered & Corrigan, Lafayette, IN, Attorney for Appellants.

John T. Hume III, Theodore J. Blanford, Hume Smith Geddes Green & Simmons, Indianapolis, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

Jim Barna Log Systems Midwest, Inc. ("Barna Log") and Peter Rosi appeal the trial court's grant of summary judgment to Hoosier Insurance Company and General Casualty Insurance Company of Wisconsin

(collectively "Insurers") and denial of motion for summary judgment filed by Barna Log and Rosi. Barna Log and Rosi raise one issue, which we restate as whether the trial court erred by granting Insurer's motion for summary judgment and by denying Barna Log's and Rosi's motion for summary judgment. We affirm.

The relevant facts designated by the parties follow. Barna Log is a seller/distributor of log home packages manufactured by Barna and Company. On July 23, 2000, Mark Grott and Barbara Grott (collectively "the Grotts") signed a contract with Barna Log for the purchase of a log home package. Rosi, acting as an agent and representative of Barna Log, contracted with the Grotts for the sale of the log home package. Barna Log hired Jerry Myers to build the Grotts' log home. On March 1, 2002, the Grotts filed a complaint against Barna Log, Barna and Company, Myers, and Rosi ("Grotts' Complaint"). The complaint included five counts, which provided, in pertinent part, that:

### COUNT I

\* \* \* \* \* \*

16. Barna Log breached its duty to Grott by negligently, carelessly, and intentionally recommending, providing, and hiring an incompetent and unqualified builder with little or no experience in constructing log homes.

\* \* \* \* \* \*

19. As a direct and proximate result of the defendants' negligence, Grott suffered damages, incurred expenses, interest and costs.

20. Rosi and [Barna Log] are jointly and severally liable for the negligence as Rosi and [Barna Log] were jointly engaged in the operation of a corporation which is merely the alter ego of its officer, director, and shareholder, which failed to observe corporate formalities, which engaged in misleading conduct, which maintained inadequate records, which co-mingled funds and identities, and which is undercapitalized.

### COUNT II

\* \* \* \* \* \*

22. The defendants breached their contract with Grott by failing to provide the materials set forth in the purchase agreement, substituting inferior and defective materials for the materials bargained for by Grott, failing to provide all of the components of the log home package bargained for by Grott, and providing specifications for a structurally unsound log home.

23. As direct and proximate result of the defendants' negligence, Grott suffered damages, incurred expenses, interest and costs.

### COUNT III

\* \* \* \* \* \*

24. The defendants converted to their own use materials, components and products purchased by Grott pursuant to the purchase agreement.

\* \* \* \* \* \*

26. As a direct and proximate result of the defendants' wrongful conversion of Grott's property, Grott suffered damages and incurred expenses, interest, costs and attorney's fees.

### COUNT IV

\* \* \* \* \* \*

28. The defendants intentionally, fraudulently, and recklessly misrepresented that Myers was a qualified, competent, bonded and in-

sured log home builder with years of experience as a log home builder and contractor.

29. Grott reasonably relied on the defendants' misrepresentations of these past and present facts to their detriment, incurring damages, expenses, interest, attorney's fees and costs as a result of this reasonable reliance.

30. Pursuant to the Indiana Code, Grott is entitled to recover treble damages for the defendants' fraudulent conduct.

\* \* \* \* \* \*

## COUNT V

\* \* \* \* \* \*

31. The defendants' acts and misrepresentations were in violation of Ind. Code § 24–5–0.5 et seq.

\* \* \* \* \* \*

WHEREFORE, [the Grotts], by counsel, demand judgment against [Barna Log], Barna and Company, and [Rosi] in an amount sufficient to compensate them for the damages as a result of the defendants' false advertising, including attorney's fees, expenses, costs and all just and proper relief.

Appellant's Appendix at 33–39.

Barna Log has a commercial general liability insurance policy ("CGL Policy") with Insurers. Barna Log and Rosi requested that Insurers defend and indemnify them against the allegations contained in the Grotts' Complaint. On May 15, 2002, Insurers sent a letter to Barna Log and Rosi indicating that there was no coverage under the CGL Policy for the claims alleged in the Grotts' Complaint, and that they refused to defend and indemnify Barna Log and Rosi.

On May 29, 2002, Barna Log and Rosi filed a complaint for declaratory relief against Insurers, requesting that the trial court "declare that [Insurers] have an obligation to defend and provide coverage for certain portions of the [Grotts' Complaint]." *Id.* at 5–6. On July 8, 2002, Insurers answered Barna Log's and Rosi's complaint, stating in part, as follows: "[Insurers] deny that they have an obligation to defend and provide coverage based upon the allegations in the [Grotts' Complaint]." *Id.* at 63. The Insurers also raised three affirmative defenses: (1) The terms and conditions of the insurance policy speak for themselves; (2) There has been no "occurrence" to trigger coverage as required by the policy; (3) There has been no "property damage" as defined by the policy.

On July 22, 2002, Barna Log and Rosi filed a motion for summary judgment against Insurers. Specifically, in their motion for summary judgment, Barna Log and Rosi argued that Insurers should be required to provide them with a defense and indemnity for Counts I, III, IV, and V of the Grotts' Complaint. On September 4, 2002, Insurers filed a cross motion for summary judgment arguing that they had no duty to provide Barna Log or Rosi with insurance coverage for any of the claims alleged in the Grotts' Complaint.

On September 17, 2002, the trial court conducted a hearing and on October 16, 2002, the trial court entered its final judgment granting summary judgment to Insurers. Specifically, the trial court's order provided in pertinent part, that:

> The Court, being duly advised, having reviewed the record or proceedings, and having considered the statements and arguments of counsel, now FINDS and ORDERS that the Defendants' Cross Motion For Summary Judgment filed September 4, 2002 should and shall be granted and that the Plaintiffs' Motion for Summary Judgment filed July 22, 2002 should and shall be denied. The

Court finds that there are no genuine issues as to any material facts and that the Defendants are entitled to Judgment as a matter of law. The Court finds the [Insurers] have no duty to defend [Barna Log and Rosi] and have no duty to provide insurance coverage to [Barna Log and Rosi] for the claims of Grott alleged in the Complaint of Declaratory Judgment.... The Court finds that [Barna Log's and Rosi's] commercial general liability insurance contract provides coverage under Section 1(b) if bodily injury or property damage is caused by an occurrence. An occurrence is defined by Section V(12) as an accident including continuous or repeated exposure to substantially the same general harmful conditions. In Black's Law Dictionary an accident is defined as an event which under the circumstances is unusual and unexpected by the person to whom it happens. According to Black's Law Dictionary, in its proper use the term accident excludes negligence. A review of the authorities cited by [Barna Log's and Rosi's] counsel and [Insurers'] counsel convinces the Court that in this case the [Insurers] owe no defense or coverage to [Barna Log and Rosi] based upon the allegations of the Declaratory Judgment Complaint. [Barna Log's and Rosi's] insurance contract does not cover an allegation regarding a claim as to Barna's alleged negligence [sic] advice. [Barna Log's and Rosi's] insurance contract does not cover intentional or reckless acts nor allegations of conversion or misrepresentation or allegations of deceptive practices. Therefore, [Insurers] are entitled to Summary Judgment against [Barna Log and Rosi] on the allegations as contained in the Complaint for Summary Judgment.

*Id.* at 3–4.

The sole issue is whether the trial court erred by granting Insurers' motion for summary judgment and by denying Barna Log's and Rosi's motion for summary judgment. In reviewing a decision on summary judgment, we apply the same standard as the trial court. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994), *reh'g denied;* Ind. Trial Rule 56(C). We must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). We construe the pleadings, affidavits, and designated materials in a light most favorable to the nonmovant and give careful scrutiny to assure that the losing parties are not improperly prevented from having their day in court. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct. App.1997), *trans. denied.* When there are material disputed facts, or if undisputed facts give rise to conflicting reasonable inferences that affect the outcome, they must be resolved in favor of the nonmovant. *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 104 (Ind. 1997). The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was erroneous. *Ind. Dep't of State Revenue v. Caylor–Nickel Clinic, P.C.*, 587 N.E.2d 1311, 1313 (Ind.1992). The fact that the parties have made cross-motions for summary judgment does not alter our standard of review. *Metal Working Lubricants Co. v. Indianapolis Water Co.*, 746 N.E.2d 352, 355 (Ind.Ct.App. 2001).

Specifically, Barna Log argues that: (1) the Grotts' Complaint alleged facts constituting an "occurrence" under the CGL Policy; (2) the Grotts' Complaint alleged facts constituting "property damage" under the CGL Policy; and (3) as an agent of Barna

Log, Rosi is entitled to defense and indemnity under the CGL Policy. The Insurers contend that the Grotts' Complaint failed to allege facts that constitute either an "occurrence" or "property damage" under the CGL Policy. Insurers also maintain that the Grotts' claims fall within exclusions contained in the CGL Policy. Insurers also allege that Rosi is not entitled to coverage for the same reasons that Barna Log is not entitled to coverage.

These issues require us to analyze the language of the CGL Policy. "The construction of an insurance contract is a question of law for which summary judgment is particularly appropriate." *State Farm Mut. Auto. Ins. Co. v. Gonterman*, 637 N.E.2d 811, 813 (Ind.Ct.App.1994). When the policy language of an insurance contract is clear and unambiguous, we will give the language its plain and ordinary meaning. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 991 (1987). An insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language. *Id.* We interpret policy terms from the perspective of an ordinary policyholder of average intelligence. *Asbury v. Ind. Union Mut. Ins. Co.*, 441 N.E.2d 232, 237 (Ind.Ct.App.1982). Where there is ambiguity, an insurance policy must be strictly construed against the insurer. *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind.1996), *reh'g denied*. This is particularly true where a policy excludes coverage. *Id.*

An insurer's duty to defend its insureds is broader than its coverage liability or duty to indemnify. *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind.Ct. App.1991). However, we determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation. *Id.* If the pleadings reveal that a claim is clearly excluded under the policy, then no defense is required. *Id.*

Nonetheless, an insurer may go beyond the face of the complaint and refuse to defend based upon the factual underpinnings of the claims contained within the complaint. *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind.Ct. App.1980). "Where the insurer is aware of facts, not in the pleadings, which clearly disclose an absence of coverage, it can refuse to defend or clarify its obligation by means of a declaratory judgment action." *Id.* at 1105. For example, "when the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Id.* Accordingly, it is the nature of the claim, not its merits, that determines the insurer's duty to defend. *Id.*

Recently, we discussed the breadth of an insured's coverage in a standard commercial general liability policy. *R.N. Thompson & Assoc., Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160, 162–163 (Ind.Ct.App.1997), *trans. denied*. We noted and observed that:

> CGL policies cover the possibility that the goods, products, or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which injury or damage the insured might be exposed to liability.

*Id.* at 162. Imbedded within the analysis of commercial general liability coverage is the notion that there are two types of risk inherent in a contractor's line of work: (1) business risk, and (2) occurrences that give rise to insurable liability. *Id.* Business risk is a consequence of not performing

well and is a component of every business relationship that is necessarily borne by the contractor in order to satisfy customers. *Id.*

> [A] contractor holds himself out as being capable of completing the bargained-for construction in a workmanlike manner. At the same time, the property owner relies upon that representation and anticipates suitable goods and services. When the contractor's work is faulty, either express or implied warranties are breached, and a dissatisfied customer may recover the cost of repair or replacement of the faulty work from the contractor as the standard measure of damages for breach of warranty.

*Id.* Conversely, in a CGL Policy,

> The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Ind. Ins. Co. v. DeZutti,* 408 N.E.2d 1275 (Ind.1980) (citing Henderson, *Insurance Protection for Products Liability and Completed Operations What Every Lawyer Should Know,* 50 NEB. L.REV. 415, 441 (1971)). As such, we are guided by the overall principle that, here, the CGL Policy "does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." *Id.* (citing *Weedo v. Stone-E-Brick, Inc.,* 81 N.J. 233, 405 A.2d 788, 796 (1979)).

 In considering whether the trial court erred by granting Insurers' motion for summary judgment and by denying Barna Log's and Rosi's motion for summary judgment, we must consider three issues: (1) whether any of the allegations

contained within Counts I, III, IV, or V of the Grotts' Complaint alleged facts that constitute an "occurrence" under the CGL Policy; (2) if so, whether those same allegations also alleged facts that constitute "property damage" under the CGL Policy; and (3) whether any exclusions apply.[1] We will address issues one and three concurrently. Because we find the resolution of issues one and three to be dispositive, we do not address issue two.

First, we consider whether Counts I, III, IV, and V of the Grotts' Complaint alleged facts that constitute an "occurrence" under the CGL Policy. The CGL Policy provides, in pertinent part, that:

> a. We will pay those sums that the insured becomes legally obligated to pay as a damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend this insured against any "suit" seeking those damages.
>
> \* \* \* \* \* \*
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory."

Appellant's Appendix at 10. Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 21. The CGL Policy does not define "accident;" however, we have held that an accident is "an unexpected happening without an intention or design." *R.N. Thompson & Assoc.,* 686 N.E.2d at 164.

---

1. Barna Log and Rosi also argue that because Barna Log is a seller/distributor of log home packages and not a contractor, the principle of business risk is not applicable. However, to the extent that the Grott's claims relate to the materials, specifications, or plans contained within the log home package, the principle of business risk is applicable.

■ Barna Log and Rosi argue that the Grotts' Complaint included several allegations of "negligent, non-intentional conduct in which resultant damage would not be expected or intended by the insured." Appellant's Brief at 7. However, contrary to Barna Log's and Rosi's contention, an allegation of negligence is not necessarily an allegation of accidental conduct as defined in the context of a commercial general liability insurance policy.

To support their proposition that negligent conduct is necessarily accidental conduct, Barna Log and Rosi rely upon *Askren Hub States Pest Control Servs., Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270 (Ind.Ct. App.1999) and *Wayne Township Bd. of School Comm'rs v. Ind. Ins. Co.*, 650 N.E.2d 1205 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* In *Askren*, we held that the negligent inspection of a home for termites was an occurrence under the commercial general liability policy. 721 N.E.2d at 277. However, there, the relevant portion of the commercial general liability policy was a pest control form that applied different definitions of "occurrence" and "property damage" than the ones contained in the CGL Policy. There, occurrence was defined as "an active 'pest' infestation of property, including continuous or repeated exposure to substantially the same general harmful conditions, which happen after inspection of the insured." *Id.* at 276. As such, *Askren* is distinguishable from this matter.

Likewise, *Wayne Township Bd. of School Comm'rs* is also distinguishable. There, the principal of an elementary school sexually molested a student. 650 N.E.2d at 1207. The student filed suit against the school alleging that it acted negligently. *Id.* The school's insurance company refused to defend the school in the suit, in part, because the student's injury was not caused by an occurrence as defined within the comprehensive general liability policy. *Id.* at 1208. There, occurrence was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected no[r] intended from the standpoint of the insured." *Id.* We observed that "[the insurer] has not designated any evidence demonstrating that the school's alleged conduct was not an accident: there is no evidence that the school intended or expected [the principal's] misconduct or that the molestation was the result of the school's intent or design." *Id.* at 1209. We noted that, "the inference of an intent to injure [the student] cannot be imputed to the school," and held that "there is no evidence demonstrating that any unreasonable conduct on the part of the school was not accidental." *Id.*

Therefore, contrary to Barna Log's and Rosi's contention, our analysis in *Wayne Township Bd. of School Comm'rs* did not center on the alleged intentional versus negligent actions of the school, but rather on the accidental nature of the school's conduct. As such, although, as Barna Log and Rosi correctly point out that we have previously found negligent conduct that was also an "occurrence" for purposes of a commercial general liability policy, our analysis always concentrated on the accidental nature of the conduct. *See, e.g., Erie Ins. Co. v. Am. Painting Co.*, 678 N.E.2d 844, (Ind.Ct.App.1997) (holding that even if the insured had been negligent in hiring employee, the act of hiring the employee was not accidental and, therefore, did not constitute an occurrence under the commercial general liability policy), *trans. dismissed.*

For example, in *R.N. Thompson & Assoc.*, 686 N.E.2d at 161, we discussed whether the homeowners association's complaint against the insured included al-

legations of accidental conduct. There, as here, the commercial general liability policy provided coverage for "'property damage' only if the property damage is caused by an 'occurrence.'" *Id.* Occurrence was defined as an "accident, including continuous exposure to substantially the same general harmful conditions." *Id.* We concluded that "the economic losses alleged by the [homeowners association] [arose] out of the contractual relationship [between] the [homeowners association] and [the insured], and not from an 'occurrence.'" *Id.* at 164. Specifically, we held that:

> [T]he [homeowners association's] action against [the insured] is one for breach of contract rising from faulty workmanship and design, and from use of defective materials. Furthermore, the economic losses suffered by the [homeowners association] are the natural and ordinary consequences of [the insured's] breach. Because a typical CGL policy 'does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident,' the [homeowners association's] losses did not arise from an 'occurrence' and are not covered by [the insured's] CGL policies.

*Id.* at 165 (internal citations omitted).

As such, to determine whether any of the allegations contained within the Grotts' Complaint alleged an occurrence as defined in the CGL Policy, we must determine whether any of the allegations contained within the Grotts' Complaint alleged accidental conduct. We will address each count separately.

## A. Count I

In Count I of the Grotts' Complaint the Grotts argued that "Barna Log breached its duty to Grott by negligently, carelessly, and intentionally recommending, providing, and hiring an incompetent and unqualified builder with little or no experience in constructing log homes." Appellant's Appendix at 35. We discussed the accidental nature of negligent hiring in *Erie Ins. Co. v. Am. Painting Co.*, 678 N.E.2d at 845–846. There, the insured was charged with the negligent hiring and retaining of an employee who caused damage to the owner's home that the insured had agreed to paint. *Id.* at 845. The term occurrence was defined as "an accident, including continuous or repeated exposure to the same general, harmful conditions." *Id.* at 846. We noted that "[s]imply stated, the contract defines an 'occurrence' as an 'accident.' In the context of insurance coverage, we have held that an accident means 'an unexpected happening' without an intention or design.'" *Id.* at 846 (internal citations omitted). Ultimately, we held that:

> In the present case, the property damage is alleged to have arisen from [the insured's] hiring and retention of [the employee]. These acts by [the insured], even if proven to be careless and negligent, were intentional, not accidental.... We hold, as a matter of law, that [the owner's] action against [the insured] did not arise from an 'accident' and, thus, was not the result of an 'occurrence' as defined by the contract between [the insurer] and [the insured].

*Id.*

Likewise, here, the Grotts allege that Barna Log and Rosi acted negligently and carelessly by selecting and hiring Myers to be the builder of the home. Even if Barna Log and Rosi acted negligently or carelessly by hiring Myers, the act itself was intentional, not accidental. As such, the allegation contained within Count I of the Grotts' Complaint does not arise from an "accident" and, thus, is not the result of an "occurrence" as defined by the CGL Policy.

Moreover, notwithstanding the fact that the Grotts did not allege an act in Count I that constituted an "occurrence" under the CGL Policy, the allegation contained in Count I falls under the "damage to your product" exclusion contained within the CGL Policy. The "damage to your product" exclusion provides that the insurance does not apply to " '[p]roperty damage' to 'your product' arising out of it or any part of it." Appellant's Appendix at 13. The CGL Policy defines "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time or the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* at 22. The CGL Policy defines "your product" as:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

 (1) You;

 (2) Others trading under your name; or

 (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials parts or equipment furnished in connection with such goods or products.

*Id.* Moreover, the CGL Policy provides that "your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

Your product does not include vending machines or other property rented to or located for the use of others but not sold.

*Id.*

In *DeZutti*, our supreme court addressed the impact on the insurer's duty to defend of an exclusion nearly identical to the "damage to your product" exclusion at issue here. 408 N.E.2d at 1277–1280. There, the buyer sued the contractor for damages allegedly caused by the contractor's faulty construction. *Id.* at 1276. The policy contained several exclusions. Exclusion "n" provided that the policy did not apply to "property damage to the named insured's products arising out of such products or any part of such products." *Id.* at 1277. The policy defined "named insured's products" as:

[G]oods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle) but, 'named insured's products' shall not include a vending machine or any property other than such container, rented to or located for the use of others but not sold....

*Id.* Further, exclusion "o" stated that the policy did not apply to "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith...." *Id.* Our supreme court concluded that:

These provisions clearly exclude insurance coverage for damages to the insured's product or work when such damages are confined to the product or work and caused by the product or work, or any part thereof. It is only damage to

other property arising out of the insured's product or work which would be covered.

*Id.* at 1280. Our supreme court explained that the term "product" as used in exclusion "n" meant "that the item made or sold is somehow defective or deficient in itself." *Id.* Our supreme court also discussed the policy surrounding commercial general liability policies and stated that:

> What is covered by the policy is defective workmanship which causes personal injury or property damage not excluded under some provision of the policy. So if the insured's breach of an implied warranty results in damage to property other than the insured's work or product which is excluded by exceptions (n) and (o), the policy would provide coverage. To hold otherwise would effectively convert the policy into a performance bond or guarantee of contractual performance and result in coverage for repair and replacement of the insured's own faulty workmanship. This was not the intent and understanding of the parties at the time the policy was purchased.

*Id.* at 1279; *see also Microvote Corp. v. GRE Ins. Group,* 779 N.E.2d 94 (Ind.Ct. App.2002) (holding that the distributor's commercial property and general liability insurance policy excluded defective products from coverage, and thus the insurer had no duty to indemnify or defend the distributor in county's action for negligence and breach of implied warranty with respect to allegedly defective voting machines), *trans. denied*; *R.N. Thompson & Assoc.,* 686 N.E.2d at 162–163 (noting that commercial general liability policies cover "tort liability for physical damages to others, and not ... contractual liability of the insured for economic loss suffered because the completed work is not what the damaged person bargained for").

■ Here, Count I of the Grotts' Complaint requested damages for the inadequate construction of the log home resulting from the fact that Barna Log and Rosi negligently selected and hired Myers to build the log home. Exclusion "k" within the CGL Policy states that the insurance does not apply to " 'property damage' to 'your product' arising out of it or any part of it." Appellant's Appendix at 13. The CGL Policy defines "your product" as "all goods or products ... sold, handled, distributed or disposed of by: (1) [y]ou;...." *Id.* at 22. Moreover, the CGL Policy provides that "your product" includes "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.' " *Id.* Like the policy in *DeZutti,* the CGL Policy "exclude[s] insurance coverage for damages to [Barna Log's] product or work when such damages are confined to the product or work and caused by the product or work, or any part thereof. It is only damage to other property arising out of [Barna Log's] product or work which would be covered." *DeZutti,* 408 N.E.2d at 1280. Because Count I of the Grotts' Complaint sought damages resulting from the inadequate construction of the log home, it falls under the "damage to your product" exclusion of the CGL Policy. As such, the trial court's determination that Insurers had no duty to defend or indemnify Barna Log or Rosi against Count I of the Grotts' Complaint was not erroneous. Accordingly, there are no genuine issues of material fact with respect to Count I and Insurers are entitled to summary judgment as matter of law with respect to this count.

### B. Count III

■ In Count III of the Grotts' Complaint, the Grotts argue that Barna Log and Rosi "converted to their own use materials, components and products pur-

chased by Grott pursuant to the purchase agreement." Appellant's Appendix at 37. Barna Log and Rosi argue that perhaps the Grotts might have alleged "negligent conversion." Appellant's Brief at 9. Barna Log and Rosi urge that "[Insurers] should be required to defend Count III until and unless there is a judicial determination that [Barna Log's] conduct was intentional, and thus not covered under the [CGL Policy]." Id. at 10. We disagree.

 "In order to maintain an action for conversion, the plaintiff must establish the appropriation of personal property by another for that party's own use and benefit in exclusion and defiance of the owner's rights." Shourek v. Stirling, 621 N.E.2d 1107, 1109 (Ind.1993). Moreover, "the essential elements of the plaintiff's claim are an immediate, unqualified right to possession resting on a superior claim of title." Id. The Seventh Circuit addressed the issue of whether conversion was an occurrence for purposes of a commercial general liability policy under Indiana law in Red Ball Leasing, Inc. v. The Hartford Accident and Indem. Co., 915 F.2d 306 (7th Cir.1990). There, the insured repossessed four trucks because its accounting system erroneously indicated that the buyer had defaulted on its payments. Id. at 308. The Seventh Circuit noted that "[t]here is no doubt that [the insured] intended to repossess the trucks; that action clearly was not an accident," and added that "a volitional act that is based on erroneous information is not an 'accident' or 'occurrence.'" Id. at 309–310. Moreover, the Seventh Circuit stated that when determining whether a given act constituted an occurrence:

> The only relevant consideration is whether ... the chain of events leading to the injuries complained of was set in motion and followed a course consciously devised and controlled by appellant

without the unexpected intervention of any third person or extrinsic force.

Id. at 310 (quoting Ed Winkler & Son, Inc. v. Ohio Cas. Ins. Co., 51 Md.App. 190, 441 A.2d 1129, 1132 (1982)). Ultimately, the Seventh Circuit held that "the decision to take the trucks—an intentional act of [the insured]—[was] not an 'accident' under the terms of the insurance policy." Id. at 312. Likewise, here, the act of conversion alleged by the Grotts' Complaint is intentional, not accidental. Moreover, even if Barna Log or Rosi acted negligently in converting the materials, "a volitional act that is based on erroneous information is not an 'accident' or 'occurrence.'" Id. at 310. Accordingly, the allegation contained within Count III of the Grotts' Complaint does not arise from an "accident" and thus, is not the result of an "occurrence" as defined within the CGL Policy.

 Moreover, notwithstanding the fact that the Grotts did not allege an act which constituted an "occurrence" under the CGL Policy, the allegation contained in Count III of the Grotts' Complaint falls under the "expected or intended injury" exclusion. The "expected or intended injury" exclusion provides that the insurance does not apply to:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons of property.

Appellant's Appendix at 10. As previously mentioned, conversion requires a knowing or intentional act. Therefore, any damages resulting from the act of conversion would necessarily be expected or intended from the standpoint of the insured. Thus, Count III of the Grotts' Complaint, which sought damages resulting from Barna Log's and Rosi's alleged conversion, falls under the "expected or intended injury"

exclusion of the CGL Policy. As such, the trial court's determination that Insurers had no duty to defend or indemnify Barna Log or Rosi against Count III of the Grotts' Complaint was not erroneous. Accordingly, there are no genuine issues of material fact with respect Count III and Insurers are entitled to summary judgment as matter of law with respect to this count.

## C. Count IV

In Count IV of the Grotts' Complaint the Grotts argued that Barna Log and Rosi "intentionally, fraudulently, and recklessly misrepresented that Myers was a qualified, competent, bonded and insured log home builder with years of experience as a log home builder and contractor." Appellant's Appendix at 37–38. Barna Log and Rosi argue that "to the extent that Count IV of the [Grotts' Complaint] sounds in negligence, or conduct [that Barna Log and Rosi] did not expect or intend to result in damage to the Grotts, the Insurers owe a duty to defend." Appellant's Brief at 10.

The five elements of fraud are:

1) a false statement of past or existing material fact,

2) made with knowledge it was false or made recklessly without knowledge of its truth or falsity,

3) made for the purpose of inducing the other party to act upon it,

4) and upon which the other party did justifiably rely and act,

5) proximately resulting in injury to the other party.

*Baxter v. I.S.T.A. Ins. Trust,* 749 N.E.2d 47, 52 (Ind.Ct.App.2001). Further, Indiana courts have held that "despite the limited recognition of the tort in the context of an employer-employee relationship, Indiana does not recognize the tort of negligent misrepresentation." *Darst v. Ill. Farmers Ins. Co.,* 716 N.E.2d 579, 584 (Ind.Ct.App.1999), *trans. denied.* As such, here, the Grotts' claim for misrepresentation requires proof of knowledgeable or reckless conduct. As previously mentioned, we define "accident" in the context of commercial general liability policies as "an unexpected happening without intention or design." *R.N. Thompson & Assoc.,* 686 N.E.2d at 164. Accordingly, the allegation contained within Count IV of the Grotts' Complaint does not arise from an "accident" and, thus, is not the result of an "occurrence" as defined within the CGL Policy.

Moreover, notwithstanding the fact that the Grotts did not allege an act which constituted an "occurrence" under the CGL Policy, the allegation contained in Count IV of the Grotts' Complaint falls under the "damage to your product" exclusion contained within the CGL Policy. *See* discussion *supra* Part A. Count IV of the Grotts' Complaint requests damages for the inadequate construction of their log home, resulting from Barna Log's and Rosi's alleged fraudulent misrepresentation regarding Myers's competence as a builder. Exclusion "k" within the CGL Policy states that the insurance does not apply to " 'property damage' to 'your product' arising out of it or any part of it." Appellant's Appendix at 13. The CGL Policy defines "your product" as "all goods or products . . . sold, handled, distributed or disposed of by: (1) [y]ou; . . . ." *Id.* at 22. Moreover, the CGL Policy provides that, "your product" includes "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.' " *Id.* Like the policy at issue in *DeZutti,* the CGL Policy "exclude[s] insurance coverage for damages to [Barna Log's] product or work when such damages are confined to the product or work and caused by

the product or work, or any part thereof. It is only damage to other property arising out of [Barna Log's] product or work which would be covered." *DeZutti*, 408 N.E.2d at 1280. Because Count IV of the Grotts' Complaint sought damages resulting from the inadequate construction of the log home, it falls under the "damage to your product" exclusion of the CGL Policy. As such, the trial court's determination that Insurers had no duty to defend or indemnify Barna Log or Rosi against Count IV of the Grotts' Complaint was not erroneous. Accordingly, there are no genuine issues of material fact with respect Count IV and Insurers are entitled to summary judgment as matter of law with respect to this count.

### D. Count V

■ In Count V of the Grotts' Complaint the Grotts argued that Barna Log's and Rosi's "acts and misrepresentations were in violation of Ind.Code § 24–5–0.5 et seq." Appellant's Appendix at 38. Thus, Count V alleges that the allegations contained within Counts I though IV amount to a violation of the Indiana Deceptive Consumer Sales Act. Ind.Code § 24–5–0.5–1—10 (Supp.2002). We have already held that each of the allegations contained within Counts I, III, and IV did not constitute an "occurrence" under the terms of the CGL Policy. *See* discussion *supra* Parts A, B, & C. This additional theory of recovery does not alter the nature of the acts from intentional to accidental. Therefore, the allegation contained within Count V of the Grotts' Complaint does not arise from an "accident" and thus, is not the result of an "occurrence" as defined by the CGL Policy.

■ Moreover, notwithstanding the fact that the Grotts did not allege an act which constituted an "occurrence" under the CGL Policy, the allegation contained within Count V of the Grotts' Complaint falls under the "damage to your product" exclusion contained within the CGL Policy. *See* discussion *supra* Part A. Ind.Code § 24–5–0.5–4(a) provides, in relevant part, that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act." Count V of the Grotts' Complaint requested damages for the inadequate construction of the log home resulting from Barna Log's and Rosi's alleged false advertising in violation of the Act. Exclusion "k" within the CGL Policy states that the insurance does not apply to " 'property damage' to 'your product' arising out of it or any part of it." Appellant's Appendix at 13. The CGL Policy defines "your product" as "all goods or products … sold, handled, distributed or disposed of by: (1) [y]ou; . . . ." *Id.* at 22. Moreover, the CGL Policy provides that "your product" includes "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.' " *Id.* Thus, like the policy at issue in *DeZutti*, the CGL Policy "exclude[s] insurance coverage for damages to [Barna Log's] product or work when such damages are confined to the product or work and caused by the product or work, or any part thereof. It is only damage to other property arising out of [Barna Log's] product or work which would be covered." *DeZutti*, 408 N.E.2d at 1280. Because Count V of the Grotts' Complaint seeks damages resulting from the inadequate construction of the log home, it falls under the "damage to your product" exclusion contained within the CGL Policy. As such, the trial court's determination that Insurers had no duty to defend or indemnify Barna Log or Rosi against Count V of the Grotts' Complaint was not erroneous. Accordingly, there are no genuine issues of material fact with

respect Count V and Insurers are entitled to summary judgment as matter of law with respect to this count.

Because we hold that Barna Log and Rosi have failed to establish that Counts I, III, and IV allege an "occurrence" as defined by the CGL Policy, and because each count falls under an exclusion contained within the CGL Policy, we need not consider whether any of the allegations contained within the Grotts' Complaint allege facts which constitute "property damage" as defined by the CGL Policy.

As such, the trial court did not err by granting Insurers' motion for summary judgment and denying Barna Log's and Rosi's motion for summary judgment.

For the foregoing reasons, we affirm the trial court's judgment granting summary judgment to Insurers and denying Barna Log's and Rosi's motion for summary judgment.

Affirmed.

KIRSCH, J. concurs.

SULLIVAN, J. concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

I am unable to fully concur because of my inability to discern a workable principle of insurance coverage law as enunciated in the Indiana case law. More particularly, I am unable to interpret the varying and seemingly inconsistent use of terminology as used in the cases concerning commercial general liability insurance coverage and as discussed in the majority opinion.

Examination of the cases involving insurance coverage discloses the use of such words and phrases as "accident," "accidental conduct," "negligence," "intentional acts," and "unexpected happening without intention." That latter phrase could refer to the tortfeasor's act, or it might refer to the unforeseen effect of that act, i.e. the injury or damage caused. In any event, the cases do not afford any meaningful guidance when we are called upon to determine whether a requisite "occurrence" has taken place. For example, in *R. N Thompson & Assocs., Inc. v. Monroe Guar. Ins. Co.*, 686 N.E.2d 160, 165 (Ind. Ct.App.1997), *trans. denied*, a panel of this court distinguished between "an accident of faulty workmanship" and "faulty workmanship which causes an accident," in holding that there was no "occurrence" within the contemplation of the insurance coverage.

In my view it is too simplistic to say that intentional conduct is no "accident" and that therefore there is no coverage for such situations. It is also too simplistic to say that negligent conduct is "accidental" and that therefore there *is* coverage. *See Wayne Township Bd. of Sch. Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205 (Ind.Ct. App.1995), *trans. denied*. But see *Erie Ins. Co. v. Am. Painting Co.*, 678 N.E.2d 844 (Ind.Ct.App.1997), *trans dismissed*, in which this court held that the negligent hiring of an employee was not accidental because it was intentional and therefore did not constitute an occurrence.

The majority here holds that the allegation under Count I of Grotts' complaint[2] "does not arise from an 'accident' and, thus, is not the result of an 'occurrence'...." Op. at 827. This is correct only if *R.N. Thompson, supra*, is wrong because the latter case held that while negligent i.e. "accidental," conduct is not within the coverage, unforeseen damage

2. This count alleged that Barna Logs "negligently, carelessly, and intentionally" hired an incompetent and unqualified builder. Appellant's App. at 35.

caused by such conduct will be within such coverage.

One might argue that *Erie* and *R.N. Thompson* are reconcilable. This is true only if *Erie* is read to say that the hiring of the painter was intentional but was done in a negligent manner, and *R.N. Thompson* is read to distinguish between negligent conduct which is accidental rather than intentional but which causes an unforeseen injury.

Be that as it may, I do not think it would serve any useful purpose to further attempt to delineate what I view as an unfortunate choice of phrasing in the various cases addressing the issue. Suffice it to say that the alleged acts of Barna Log are not within the CGL policy here involved.

For this reason I concur in result.