FIDELITY AND DEPOSIT COMPANY OF MARYLAND V.
PETTIS DRY GOODS COMPANY.

[No. 26,017. Filed April 16, 1934. Rehearing denied
June 28, 1934.]

*Ralph K. Kane, Gideon W. Blain,* and *Robert Hollo-well, Jr.,* for appellant.

*Fesler, Elam & Young* and *Irving M. Fauvre,* for appellee.

FANSLER, J.—This is an action instituted by appellee against appellant to recover upon a contract of insurance for a loss resulting from a burglary committed on appellee's premises. The first paragraph of complaint is to recover upon drafts given in settlement of part of the loss. The second paragraph is upon the policy of insurance. Appellant answered in three paragraphs. The cause was tried by the court without the intervention of a jury. There were special findings of fact and conclusions of law in favor of appellee, and judgment for appellee upon both paragraphs of complaint.

Appellant's motion for a new trial was overruled, and error is assigned upon that ruling and the court's conclusions of law.

All of the error claimed by appellant is based upon the contention that one Hindman, who participated in the burglary, was a watchman in the employ of appellee.

If this contention cannot be sustained there was no error.

The policy of insurance contained the following provisions:

"Item 12. A private watchman is employed exclusively by the Assured and he will be on duty within the premises at all times when the premises are not regularly open for business, while this Policy is in force, except as herein stated: No exception.

"Item 13. The watchman described in Item 15 will make hourly rounds and record same on a watchman's clock, or will signal an outside central station at least hourly, except as herein stated: Signal outside station hourly."

"The Company shall not be liable for damage to the premises, furniture, fixtures or safes therein, unless such property is owned by the Assured or unless the Assured as tenant is liable for such damage; nor shall the Company be liable for loss or damage: (1) if the Assured, any associate in interest, watchman, or office or clerical employe of the Assured is a principal or an accessory in effecting or attempting to effect the burglary:" . . .

There was installed in appellee's place of business an alarm system consisting of twenty-seven signal boxes, each connected by wire with the office of a telegraph company in such a manner that when the box was pulled a signal was given at that office. Twenty-six of these boxes were pulled regularly and in a certain sequence and at specified intervals. One of the boxes was an emergency box which was not to be pulled. There was nothing on any of the boxes to indicate the ones to be pulled nor the sequence in which they were to be operated. It was necessary for the watchman to be informed of the location of the boxes and the sequence in which they were to be used, and failure to pull a box at the proper time, or pulling a box other than in regular sequence, was treated as a trouble signal upon which the police would be notified. These facts were not generally

known, nor intended to be generally known, among the employees of appellee. It will be noted that this elaborate system was more than required by Item 13 of the policy above quoted.

Appellee had continuously for a long time employed a regular night watchman, who was on duty and who was overpowered by the burglars at the time of the robbery. Thomas Hindman had been employed by appellee for many years as a porter and garage man. About seven months prior to the burglary in question there had been another burglary in appellee's plant, following which Hindman was instructed to stay with the regular night watchman as company, which he did for several nights, and thus learned how and when and in what order the alarm boxes were pulled. On six Saturday nights, beginning in November and ending on December 15th, the regular night watchman was allowed to be off duty, and Hindman was instructed to serve as temporary night watchman. His instructions were separate and distinct for each Saturday night, and not general. On the last Saturday night he served, some money collected by drivers was turned over to him and disappeared. Thereafter he did not serve again as night watchman, and the disappearance of the money was one of the reasons he was not thereafter asked to serve. Between the last Saturday night he served and the night of the burglary here in question, one Saturday night intervened. Hindman was carried on the books of appellee as a garage man, but there were entries for the weeks he served as temporary watchman on Saturday, showing he was paid $5.00 for this service. On the day before the burglary Hindman had performed his regular duties as a garage man, and at the close of business had hid himself on the premises of appellee, and in the early morning had let the outside burglars in and helped them accomplish their robbery by making the rounds

and pulling the alarm boxes, thereby preventing interruption or investigation. Appellant contends that under these facts Hindman was a night watchman within the exclusion clause of the contract above quoted, and upon that contention rests all of its claims of error.

The policy, including the above-quoted portions, was upon the regular printed form prepared by appellant, and, under the familiar rule, any doubts or ambiguities must be resolved most strongly against it. The last clause of the policy above quoted provides that if a member of certain specified classes participates in a burglary there will be no liability under the policy. By specifying and including the members of these classes in the clause, it must be deemed to have been the intention that members of all other classes should be excluded from the clause, and that the company would be liable for any burglary participated in by any or all persons except those specially designated in the clause. It is clear from the evidence that Hindman was not employed as a night watchman, and was not serving as such on the night of the burglary, and that he had never been regularly employed as a night watchman. His services as such had been temporary and occasional, and at definitely specified times. The contention that he comes within the exclusion clause suggests the question—Would he be within that clause if he were no longer employed by appellee; or, if he had served as temporary night watchman many years before? Is an ex-associate in interest, ex-office or clerical employee within that clause, regardless of how long he has been disassociated with appellee? The queries cannot be reasonably answered in the affirmative. The clause is written in the present tense, and we find no difficulty in construing it to refer to any present associate in interest, present watchman, or present office or clerical employee, and not to include

those who might have stood in that relationship in the past. But appellant contends that "the plain purpose for excluding liability for a burglary participated in by a watchman was because a watchman would have knowledge of the operation of the alarm system and thus produce a greatly increased hazard. Hindman had full knowledge of the alarm system and it was because of his knowledge thereof that he was enabled to properly turn in alarms and prevent an investigation during the time required for the burglary."

But, as has been pointed out, the elaborate alarm system in use was not required by the policy, nor was any alarm system or outside signal required. It was only specified that the watchman's round be recorded on a watchman's clock, or an outside signal given. The clause in question cannot be construed to include employees or others who might know of the method of giving an alarm signal without any express provision to that effect, which could have been inserted had it been the intention of the parties that participation by such a person would exclude liability on the part of appellant. And there is no more reason for excluding liability because an ex-watchman, who understood a signal system, participated in the burglary, than if the participant had been an ex-associate in interest, or ex-office or clerical employee who might have had the same information.

The facts found are sufficient to sustain the judgment, and there is no error in the conclusions of law respecting the second paragraph of complaint.

The first paragraph of complaint is based upon two drafts delivered to appellee by appellant in partial settlement of the loss occasioned by the burglary. After delivery appellant stopped payment on the draft. Appellant's defense to this paragraph was that the drafts were issued under mistake of a material fact; that is,

that Hindman was a watchman and participated in the burglary and had been arrested, and that, therefore, appellant was not liable, and that the drafts were given under the mistaken impression that it was liable. It is true that Hindman participated in the burglary and that he had been arrested, and these facts were known to appellee at the time the drafts were delivered. As pointed out, it is not true that he was a watchman. Under the facts found, as above outlined, Hindman's participation in the burglary did not exclude liability under the policy, was not a material fact, and was not a defense to the first paragraph of complaint.

In view of our conclusion, the evidence admitted and complained of could not have affected the result, and, therefore, did not prejudice appellant's rights.

Judgment affirmed.