AMERICAN STATES INSURANCE COMPANY, Appellant (Third–Party Defendant below),

v.

Vincent A. KIGER and Maria L. Kiger d/b/a Kiger's Sunoco, Appellees (Third–Party Plaintiffs below),

v.

COMMISSIONER, INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, .(Plaintiff below).

No. 32S05–9409–CV–836.

Supreme Court of Indiana.

March 27, 1996.

Rehearing Denied May 31, 1996.

Barry C. Cope, American States Insurance Company, Tammy J. Meyer, Martha S. Hollingsworth, Bingham, Summers, Welsh & Spilman, Indianapolis, for Appellant.

James E. Rocap, Michael D. Ramsey, Rocap, Witchger & Threlkeld, John G. McAndrews, Dean J. Vigliano, Mendes & Mount, New York City, for amici curiae London Market Insurers.

Edward Zampino, Peter E. Mueller, Victor C. Harwood, III, Harwood Lloyd, Hackensack, NJ, Norman T. Funk, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, for amici curiae The Aetna Casualty and Surety Company.

Lee B. McTurnan, Steven M. Badger, McTurnan & Turner, Indianapolis, Laura A. Foggan, Roberta B. Bell, William G. Miller, Wiley, Rein & Fielding, Washington, DC, for amici curiae the Insurance Environmental Litigation Association.

George Plews, Peter M. Racher, Jeffrey Claflin, Plews Shadley Racher & Braun, Indianapolis, for Appellees.

Anita Kimmell, Office of Attorney General, Indianapolis, for Appellee (Plaintiff Below), Indiana Department of Environmental Management.

Christopher G. Scanlon, Kevin M. Toner, Baker & Daniels, Indianapolis, for amici curiae Indiana Manufacturers Association.

Lawrence A. Vanore, Sommers & Barnard, P.C., Indianapolis, Eugene R. Anderson, Mayda Prego, Anderson Kill Olick & Oshinsky, P.C., New York City, for amici curiae Indiana Oil Marketers Association and the Indiana Chapter of the National Solid Wastes Management Association.

Richard M. Schumacher, Corporate Counsel, Northern Indiana Public Service Company, Merrillville, Lester O. Brown, Kenneth A. Remson, Jones, Day, Reavis & Pogue, Los Angeles, CA, for amici curiae the Indiana Gas and Electric Utilities.

Stephen R. Pennell, Stuart & Branigan, Lafayette, IN, for amici curiae Great Lakes Chemical Corp.

### ON EMERGENCY PETITION
### TO TRANSFER

DeBRULER, Justice.

This case comes before the Court on emergency petition to transfer. Ind.Appellate Rule 4(A)(9). Appellant American States Insurance Company ("American States") appeals from a denial of its motion for summary judgment and a grant of Appellees Vincent and Maria Kiger's ("Kiger") cross-motion for summary judgment. The original claim for damages/reimbursement for clean-up costs was brought by appellee the Indiana Department of Environmental Management ("IDEM"). This Court granted transfer in order to address the following issues:

1) whether the pre–1987 insurance policies' clauses which require that the pollution be "sudden and accidental" preclude coverage for leakage from underground gasoline storage tanks; and

2) whether the pollution exclusion clauses of those policies issued. in 1987 and after ("post–1987 policies"), which do not specifically list gasoline as a pollutant, preclude coverage for leakage from underground gasoline storage tanks.

On September 17, 1990, several residents of Danville complained to IDEM about petroleum vapors in their homes. At approximately the same time, the Town Manager of Danville informed IDEM that petroleum product had been detected in a portion of the Danville sanitary sewer. IDEM's Emergency Response Branch (ERB) investigated the complaints and determined that portions of Danville's sewer line exceeded safe levels of petroleum. ERB also determined that the source of this contamination was an underground storage tank at the Sunoco gas station belonging to Kiger. When Danville repaired a sanitary tile which ran from the tank pit to the sanitary sewer system, the release of gasoline into the sewer system stopped.

Unfortunately, Danville continued to experience problems with petroleum contamination throughout 1991 and 1992. The contamination was invariably traced back to Kiger, and IDEM spent in excess of $400,000.00 attempting to clean up the gasoline. Finally, in March 1992, a major leak was discovered at Kiger Sunoco and a sump was installed to recover the petroleum product that was being released into the environment.

On June 30, 1992, IDEM filed a complaint against Kiger to recover funds expended in responding to the gasoline contamination in and around the gasoline station operated by Kiger, Kiger Sunoco. The complaint also sought to require Kiger to perform certain

acts to clean up the gasoline contamination in the area.

Kiger filed an answer on July 23, 1992, denying liability for the damage. Kiger also filed a third-party complaint, alleging that American States was obligated to defend and indemnify Kiger against IDEM's claims. American States filed its answer on December 4, 1992, asserting twenty-six separate affirmative defenses. American States denied that Kiger was entitled to any coverage and disputed the existence of policies issued to Kiger prior to 1980.

On June 16, 1993, American States filed its motion for summary judgment based on the pollution exclusions in the policies issued to Kiger. After several extensions of time, Kiger responded on November 1, 1993, with a cross-motion for summary judgment which designated certain factual issues which would preclude granting American States motion for summary judgment. IDEM also filed a brief in opposition to American States motion for summary judgment.

On January 13, 1994, the trial court held a hearing where American States, Kiger, and IDEM offered oral argument. On March 1, 1994, after post-hearing briefs were filed, the trial court filed its judgment and order. It decided that American States owed Kiger coverage for both the pre- and post–1987 liability and had a duty to defend Kiger. American States appealed. Kiger and IDEM petitioned for emergency transfer. Since this case involved "a substantial question of law of great public importance" which requires speedy resolution, we granted transfer September 2, 1995. App.R. 4(A)(9).

## I

■ American States claims that the phrase "sudden and accidental" in the insurance contract limits coverage for pollution related damage to those harms which occurred both abruptly and unintentionally. Kiger responds that "sudden" does not require a temporal element and that the phrase "sudden and accidental" should be understood as meaning unexpected and unintended.

■ The interpretation of insurance policies is not a new task for this Court. See, e.g., Glens Falls Ins. Co. v. Michael, 167 Ind. 659, 74 N.E. 964 (1905). Where there is ambiguity, insurance policies are to be construed strictly against the insurer. Fidelity and Deposit Co. of Maryland v. Pettis Dry Goods Co., 207 Ind. 38, 190 N.E. 63 (1934). This is particularly true where a policy excludes coverage. See Asbury v. Indiana Union Mut. Ins. Co., 441 N.E.2d 232, 242 (Ind. Ct.App.1982). This strict construal against the insurer is driven by the fact that the insurer drafts the policy and foists its terms upon the customer. "The insurance companies write the policies; we buy their forms or we do not buy insurance." American Economy Ins. Co. v. Liggett, 426 N.E.2d 136, 142 (Ind.Ct.App.1981).

■ This Court is well aware of the seriousness of this dispute. This case raises important issues of environmental protection, liability, and contract interpretation. This Court, however, needs to address only the last of these. The pre–1987 "pollution exclusion" reads as follows:

This insurance does not apply to:

\*     \*     \*     \*     \*     \*

8. Bodily injury or property damage caused by the dumping, discharge or escape of irritants, pollutants or contaminants. This exclusion does not apply if the discharge is sudden and accidental.

Generally, in the absence of any ambiguity, words will be given their ordinary meaning when interpreting contracts. See Holtzclaw v. Bankers Mut. Ins. Co. (1983), Ind.App., 448 N.E.2d 55, 59, transfer denied. If one considers the insurance industry's own interpretation of the contractual language, it becomes clear that there exists a lack of clarity.[1] The ambiguous phrase "sudden and accidental" was first added to insurance policies in the early 1970's, in response to a

---

1. There exists no consensus among the various jurisdictions. Contrast, for instance, Claussen v. Aetna Cas. & Sur. Co., 259 Ga. 333, 380 S.E.2d 686 (1989) and Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083 (Colo.1991) with Waste Management v. Peerless Ins. Co., 315 N.C. 688, 340 S.E.2d 374 (N.C.1986).

plethora of claims for damage caused by polluting industries. The industry claimed that its addition was a mere clarification. The drafters said that

> coverage for pollution may not be provided in most cases under present policies because the damages could be said to be *expected and intended* and thus would be excluded by the definition of occurrence, and, therefore, the adoption of an exclusion could be said to be a clarification, but a necessary one in order to avoid any question of intent.

Minutes of the Industrial Rating Board General Liability Governing Committee (March 17, 1970) (emphasis added) (quoted in Harwood et al., *The "Frivolity" of Policyholder Gradual Pollution Discharge Claims,* 5 Mealey's Ins.Lit.Rpts. No. 40 (August 1991)). In other words, the adding of the "sudden and accidental" language is nothing more than a "clarification" which made explicit the fact that the insurance did not cover those acts which are expected or intended.

■ Thus, the insurance industry's own understanding of this language indicates that "sudden" can be understood to mean "unexpected." [2] We are not adopting this understanding under a doctrine of "regulatory estoppel" or any other theory. That this interpretation was advanced simply demonstrates the presence of the ambiguity that requires this Court to construe the insurance policy in favor of the insured and against the insurer who drafted it. When the insurance industry itself has offered differing interpretations of the same language, we must assume that the insured understood the coverage in the more expansive way. *See Eli Lilly and Co. v. Home Ins. Co.* (1985), 482 N.E.2d 467. Accordingly, the pre–1987 insurance policy is properly construed to provide coverage for damage done by discharges of gasoline.

## II

■ American States claims that the explicit pollution exclusion clause in the post–1987 insurance policies precludes any coverage for leakage which occurred after that year. Kiger responds that if the policy was intended to exclude coverage for damage caused by gasoline, it should have included gasoline in its list of pollutants.

We begin by noting one oddity in American States' position. That an insurance company would sell a "garage policy" to a gas station when that policy specifically excluded the major source of potential liability is, to say the least, strange. It remains true, however, that if the policy clearly excludes such coverage, that contract will be enforced.

The insurance policy does contain an explicit "pollution exclusion" clause. The clause provides that

> [t]his insurance does not apply to any of the following:
>
> \*     \*     \*     \*     \*     \*
>
> "Bodily injury," "property damage" or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."
>
> \*     \*     \*     \*     \*     \*
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Clearly, this clause cannot be read literally as it would negate virtually all coverage. For example, if a visitor slips on a grease spill then, since grease is a "chemical," there would be no insurance coverage. Accordingly, this clause requires interpretation. As mentioned in Section I, the interpretation of

---

**2.** While not dispositive it is worth noting that the various editions of Black's Law Dictionary published closest in time to the signing of the various contracts have no definition including any temporal element but only those meaning "unexpected" or "unforeseen." *See, e.g.,* Black's Law Dictionary (4th ed. 1951) (happening without previous notice); *see also* Black's Law Dictionary (5th ed. 1979) (same). Black's Law Dictio-

nary is exactly the type of source that an intelligent layperson might rely on when entering into a contract, including an insurance policy. Some dictionaries offer differing definitions, for instance, *Funk & Wagnall's New Standard Dictionary of the English Language* (1st ed. 1963); however, this case is no more a matter of dueling dictionaries than it is of dueling jurisdictions. *See* fn 1.

insurance policies is not new to this Court. We are particularly troubled by the interpretation offered by American States, as it makes it appear that Kiger was sold a policy that provided no coverage for a large segment of the gas station's business operations. In addition, the language excludes coverage for damage caused by "alleged discharge[s]" of "pollutants," which could be understood to mean that a mere allegation of pollution discharge could defeat all coverage.

■ In any event, since the term "pollutant" does not obviously include gasoline and, accordingly, is ambiguous, we once again must construe the language against the insurer who drafted it. Appellant claims that in common parlance gasoline is sometimes referred to as a pollutant. That may be correct, but the ambiguity remains. If a garage policy is intended to exclude coverage for damage caused by the leakage of gasoline, the language of the contract must be explicit. This follows the more general rule of construing exclusions strictly against the insurer and in favor of coverage. *Gulf Ins. Co. v. Tilley,* 280 F.Supp. 60 (N.D.Ind.1967), *aff'd,* 393 F.2d 119 (7th Cir.1968). In this case that requires that coverage for the gasoline contamination which occurred be available under the post–1987 policies.

### Conclusion

This Court, having carefully considered the language of the policies, finds that American States is required to defend, and possibly indemnify, Kiger for the damage done by the gasoline spills at issue in this case. Accordingly, having granted emergency transfer, we affirm the summary judgment only as to the availability of insurance coverage, both pre–1987 and post–1987, and remand this case to the trial court for further consistent proceedings.

DICKSON and SELBY, JJ., concur.

SULLIVAN concurs and dissents with separate opinion in which SHEPARD, C.J., concurs.

SULLIVAN, Justice, concurring and dissenting.

Both sides in this case are represented by extremely able lawyers who have made very strong arguments in support of their respective positions, each of which is amply supported by relevant case law, helpful secondary sources and *amici curiae.* After digesting all of this material, I sort out the issues somewhat differently from the majority.

The Kigers' general comprehensive liability (GCL) policies issued prior to 1987 excluded from their coverage: "Bodily injury or property damage caused by the dumping, discharge or escape of irritants, pollutants or contaminants." However, this exclusion was subject to the following exception: "This exclusion does not apply if the discharge is *sudden* and accidental."

After studying the briefs and the cases and secondary sources on the coverage provided by these policies, I find myself in agreement with the majority and those cases that hold that (i) because the term "sudden" is susceptible of two reasonable interpretations ("abrupt" and "unexpected"), it is ambiguous under Indiana law and (ii) the dictates of this state's insurance law requires resolving this ambiguity in favor of the Kigers. *See New Castle County v. Hartford Accident & Indemnity Co.,* 933 F.2d 1162, 1192–1199 (3d Cir.1991), *after remand,* 970 F.2d 1267, 1269 (1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993); *Just v. Land Reclamation, Ltd.,* 155 Wis.2d 737, 456 N.W.2d 570 (Wis.1990); *Claussen v. Aetna Casualty & Surety Co.,* 259 Ga. 333, 380 S.E.2d 686 (Ga.1989).

The GCL policies purchased by the Kigers starting in 1987 provided that the insurance policy did not cover: "Bodily injury, property damage or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." These polices also contained the following definition: "Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

After studying the briefs and the cases and secondary sources on the coverage provided by these policies, I find myself in disagreement with the majority and in agreement

with those cases that hold (i) that this so-called "absolute" pollution exclusion is unambiguous and (ii) that gasoline and petroleum products that contaminate ground or water constitute "pollutants." *See Heyman Associates No. 1 v. Insurance Co. of State of Pennsylvania,* 231 Conn. 756, 769–777, 653 A.2d 122, 129–133 (Conn.1995); *Union Mutual Insurance Co. v. Hatch,* 835 F.Supp. 59, 64–66 (D.N.H.1993).

In this case, the facts show that the discharge of the Kigers' gasoline was accidental and contaminated the ground and perhaps the groundwater supply. Based on these facts and the analysis of the policy provisions presented above, I conclude that the Kigers' pre–1987 policies covered claims for damages arising from the discharge of their gasoline because those policies covered the accidental discharge of the contaminating pollutant gasoline. However, I conclude that the latter polices excluded coverage for damages arising from the discharge of the Kigers' gasoline because those polices did not cover the accidental discharge of the contaminating pollutant gasoline.

For these reasons, I concur in Part I but dissent from Part II of the majority's opinion.

SHEPARD, C.J., concurs.