# FOR PUBLICATION



FILED

Mar 16 2012, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**SEAN J. QUINN**
**MICHELLE L. SHIRK**
Newby, Lewis, Kaminski & Jones, LLP
La Porte, Indiana

ATTORNEY FOR APPELLEE:

**GINNY L. PETERSON**
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

INDIANA FARM BUREAU INSURANCE )
COMPANY as subrogee of JOSEPH KOORS )
d/b/a KOORS AMOCO, )
　 )
　　Appellant-Plaintiff, )
　 )
　　　　vs. ) No. 43A04-1109-PL-507
　 )
HARLEYSVILLE INSURANCE COMPANY, )
　 )
　　Appellee-Defendant. )

APPEAL FROM THE KOSCIUSKO SUPERIOR COURT
The Honorable Duane G. Huffer, Judge
Cause No. 43D01-0911-PL-235

March 16, 2012

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Plaintiff Indiana Farm Bureau Insurance Company ("Farm Bureau"), as subrogee of Joseph Koors d/b/a Koors Amoco, appeals from the trial court's denial of its summary judgment motion against Appellee-Defendant Harleysville Insurance Company ("Harleysville") and the trial court's grant of Harleysville's summary judgment motion. Farm Bureau contends that the trial court erred in concluding that Harleysville was not obligated to defend and indemnify Koors in proceedings related to the remediation of contamination at its place of business. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Koors Amoco is a service station owned and operated by Koors in Warsaw. (Appellant's App. 47). On approximately April 2, 1998, Koors notified the Indiana Department of Environmental Management ("IDEM") of his desire to remove an underground storage tank ("UST") system at Koors Amoco. In June of 1998, a site assessment was conducted by Heartland Environmental Associates, and the resulting report was dated June 11, 1998, and issued to IDEM on June 15. The report detailed that testing of soil samples taken from Koors Amoco "indicate[d] that some release to the subsurface has occurred from the UST system, and water samples from the excavation pit contained BTEX[1] compounds in excess of IDEM action levels." Appellant's App. pp. 48-49.

On August 30, 2004, IDEM contacted Koors and advised him that an Initial Site Characterization report was required to be completed within forty-five days. Heartland conducted a Limited Site Investigation at Koors Amoco and submitted a report to IDEM on

---

[1] "BTEX is the term used for benzene, toluene, ethylbenzene, and xylene-volatile aromatic compounds typically found in petroleum product, such as gasoline and diesel fuel." U.S. GEOLOGICAL SURVEY, http://toxics.usgs.gov/definitions/btex.html. (last visited Feb. 29, 2012) (citation omitted).

December 22, 2004. In a letter dated August 23, 2005, IDEM requested further site investigation and testing to determine the extent of contamination. Neither of the letters indicated that actionable contamination existed at Koors Amoco or that remediation was required at that time.

On December 18, 2008, Koors tendered a demand to Farm Bureau and Harleysville for defense and indemnification related to IDEM's actions, environmental testing, and remediation. Farm Bureau had insured Koors Amoco in 1998 when the initial soil testing was performed by Heartland. On June 8, 1998, Koors had submitted an insurance application with Harleysville, and coverage by Harleysville began on August 3, 1998. In the end, Harleysville issued six Commercial Property and Garage policies to Koors between August 3, 1998, and August 3, 2004. All six polices contained the following provisions:

> SECTION II – LIABILITY COVERAGE
> A. Coverage
> "GARAGE OPERATIONS" – OTHER THAN COVERED "AUTOS"
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos."
> We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance – "Garage Operations" – has been exhausted by payment of judgments or settlements.

Appellant's App. pp. 275, 378, 490, 601, 719, 841.

The polices all contained the following language regarding Koors's duty to provide notice of a loss:

3

2. Duties in the event of Accident, Claim, Suit, or Loss
   We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
   a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the accident or "loss".

Appellant's App. pp. 284, 387, 499, 610, 851.

The policies in effect from August 3, 2002, through August 3, 2004, contained language concerning known losses:

A. COVERAGES
….
   b. This insurance applies to "bodily injury" and "property damage" only if:
….
   (3) Prior to the policy period, no "insured" listed under Who Is An Insured and no "employee" authorized by you to give or receive notice of an "accident" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed "insured" or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any "insured" listed under Who Is An Insured or any "employee" authorized by you to give or receive notice of an "accident" or claim, includes any continuation, change of resumption of that "bodily injury" or "property damage" after the end of the policy period.
   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Who Is An Insured or any "employee" authorized by you to give or receive notice of an "accident" or claim:
      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

4

Appellant's App. pp. 719-20, 841-42.

Finally, the Harleysville policies with Koors all contained the following language concerning pollution:

B. Exclusions
This insurance does not apply to any of the following:

….

8. Pollution Exclusion Applicable to "Garage Operations" – Other Than Covered "Autos"
"Bodily injury", "property damage" or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, release or escape of "pollutants":
a. At or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any "insured";

….

c. At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations:
(1) To test for, monitor, clean up, remove, contain, detoxify or neutralize, or in any way respond to, or assess the effects of the "pollutants"; or
(2) If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor[.]

….

Loss, cost or expense means those resulting from any:
(1) Request, demand or order that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants";
(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

….

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

Appellant's App. pp. 277-78, 288, 380-81, 391, 492-93, 503, 603-04, 614, 721-23, 736, 843-

5

45, 855.

On April 7, 2009, Harleysville notified Koors that it did not believe that it had a duty to defend and indemnify him on the bases that (1) any loss related to the IDEM action prior to the initiation of coverage on August 3, 1998, (2) Koors breached the policy by failing to notify Harleysville as soon as practicable that a loss had occurred, and (3) the pollution exclusion of some, if not all, of the policies may bar coverage. On November 9, 2009, Farm Bureau filed a complaint for contribution against Harleysville seeking to recover a *pro rata* share of expenses related to the IDEM action. Both parties filed summary judgment motions. On August 24, 2011, the trial court granted Harleysville's summary judgment motion and denied Farm Bureau's.

## DISCUSSION AND DECISION

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears

6

the burden of persuading us that the trial court erred.  *Id.*

## I. The Known Loss Doctrine

Farm Bureau contends that the "known loss" doctrine does not excuse Harleysville

from its obligation to defend and indemnify Koors.  We first recognized the known loss

doctrine in *General Housewares Corp. v. National Surety Corp.*, 741 N.E.2d 408 (Ind. Ct.

App. 2000):

> The "known loss" doctrine is a common law concept deriving from the
> fundamental requirement in insurance law that the loss be fortuitous.  *Pittston
> Co., Ultramar America Ltd. V. Allianz Ins. Co.* (1997) 3d Cir., 124 F.3d 508,
> 516.  Simply put, the known loss doctrine states that one may not obtain
> insurance for a loss that has already taken place.  *Id.*  Describing the known
> loss doctrine, commentators have noted that "losses which exist at the time of
> the insuring agreement, or which are so probable or imminent that there is
> insufficient 'risk' being transferred between the insured and insurer, are not
> proper subjects of insurance."  7 LEE R. RUSS AND THOMAS F.
> SEGALLA, COUCH ON INSURANCE, § 102:8 at 20 (3d ed. 1997).
> This principle has been referred to by various names, including "loss in
> progress," "known risk," and "known loss." RUSS AND SEGALLA, supra, §
> 102:8 at 20.  "Loss in progress" refers to the notion that an insurer should not
> be liable for a loss which was in progress before the insurance took effect.  *Id.*
> Although the term "known loss" has been limited to those situations where a
> loss has actually occurred, *see, e.g.*, *Domtar, Inc. v. Niagara Fire Ins. Co.*
> (1997) Minn., 563 N.W.2d 724, most courts have defined the doctrine to also
> include losses which are "substantially certain" to occur or which were a
> "substantial probability."  RUSS AND SEGALLA, supra, § 102:8 at 21.
> Despite some differences between the various labels used, we agree with the
> Illinois Supreme Court, which noted that the term "'known loss' most
> adequately describes the doctrine." *Outboard Marine Corp. v. Liberty Mut.
> Ins. Co.* (1992), 154 Ill.2d 90, 180 Ill. Dec. 691, 607 N.E.2d 1204, 1209-10.
> Therefore, we will use the term "known loss" to encompass the fortuity
> principle.
> ….
> [W]e hold that if an insured has actual knowledge that a loss has occurred, is
> occurring, or is substantially certain to occur on or before the effective date of
> the policy, the known loss doctrine will bar coverage.  This is not to say,
> however, that parties may not explicitly agree to cover existing losses.  Indeed,

7

the known loss doctrine is inapplicable "if the insurer also knew of the circumstances on which it bases the defense." RUSS AND SEGALLA, supra, § 102:8 at 23.

*Id*. at 413-14. "The very term 'known loss' indicates that actual knowledge upon behalf of the insured is required before the doctrine will apply. This is ordinarily a question of fact." *Id*. at 413-14 ) (footnote omitted).

Farm Bureau contends that there remains a genuine issue of material fact regarding Koors's actual knowledge of a loss prior to August 3, 1998, while Harleysville contends that the record supports the unavoidable inference that Koors had actual knowledge of the loss. On this point, we agree with Farm Bureau. While there is designated evidence that Heartland notified IDEM on Koors's behalf of actionable contamination at Koors Amoco, there is no evidence that it notified *Koors* of the condition or that he learned of it some other way. *Cf. Crawfordsville Square, LLC. v. Monroe Guar. Ins. Co.*, 906 N.E.2d 934, 936 (Ind. Ct. App. 2009) (concluding that landowner had actual knowledge of loss based on letter indicating that "[c]lean up [sic] of both petroleum and cleaning agent contamination [on the parcel] must happen. The law requires it."), *trans. denied*. Harleysville is not entitled to summary judgment on the basis that the known loss doctrine precludes coverage.

## II. Failure to Give Timely Notice of Loss to Harleysville

Farm Bureau also contends that a genuine issue of material fact remains as to whether Harleysville received reasonable notice of the loss.[2]

---

[2] Although the trial court's order is unclear as to its reasons for granting Harleysville summary judgment, its comments at the hearing indicate that it was likely due to its conclusion that Koors provided Harleysville with late notice of the loss.

8

We have held that the notice requirement is "material, and of the essence of the contract." *London Guarantee & Accident Co. v. Siwy*, 35 Ind. App. 340, 66 N.E. 481, 482 (1903). The duty to notify an insurance company of potential liability is a condition precedent to the company's liability to its insured. *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind. Ct. App. 1993), *trans. denied*. When the facts of the case are not in dispute, what constitutes reasonable notice is a question of law for the court to decide. *Id*. Unlike other policy provisions requiring the cooperation of the insured, noncompliance with notice of claim provisions resulting in an unreasonable delay triggers a presumption of prejudice to the insurer's ability to prepare an adequate defense. *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1984). The Indiana Supreme Court stated in *Miller* that:

> The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by a delayed notice.

*Askren Hub States Pest Control Services, Inc. v. Zurich Ins. Co.*, 721 N.E.2d 270, 277-78 (Ind. Ct. App. 1999).

## A. Unreasonably Late Notice

As previously mentioned, all of Koors's policies with Harleysville provided that "[i]n the event of 'accident', claim, 'suit' or 'loss', you must give us or our authorized representative prompt notice of the accident or 'loss'." Appellant's App. pp. 284, 387, 499, 610, 851. Farm Bureau argues that Koors did not have knowledge of the loss until December 2008, or, at the very least, that the question of when Koors had actual knowledge is one of fact for the jury. Harleysville argues that the 1998 Heartland report or the IDEM letters to Koors dated August 30, 2004, and August 23, 2005, provided Koors with actual knowledge of the loss such that his December 2008 notice to Harleysville was unreasonably late as a matter of law.

9

Under the facts of this case, we agree with Koors's argument that the question of actual knowledge is one for the jury. As previously mentioned, there is no designated evidence that Heartland notified Koors that his property contained actionable contamination in 1998 or that he gained that knowledge from another source. Moreover, neither of the IDEM letters from 2004 and 2005 contains any indication that Koors Amoco's contamination is actionable or that remediation will be required, providing only that Koors provide IDEM with required site assessments.[3] We cannot conclude that this designated evidence inexorably leads to the conclusion that Koors had knowledge of the loss before December of 2008. Because the basic fact of Koors's knowledge of the loss is in dispute, the question of unreasonable delay also becomes one for the jury. *See Askren*, 721 N.E.2d at 278.

## B. Prejudice

Farm Bureau contends that the designated evidence establishes that, even if Koors's delay in giving notice was unreasonable, Harleysville was not prejudiced by it. Harleysville counters by noting that Farm Bureau has not designated any evidence to rebut the presumption that it was prejudiced, if, in fact, Koors's delay was unreasonable.

> Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit. This is not in conflict with the public policy theory that the court should seek to protect the innocent third parties from attempts by insurance companies to deny liability for some insignificant failure to notify. The injured party can establish some evidence that prejudice did not occur in the particular situation. Once such evidence is introduced, the question becomes one for the trier of fact to determine whether any prejudice actually existed. The insurance carrier in turn can present evidence in support of its claim of prejudice. Thus, both parties are able to put

---

[3] It may be that such requests for assessments invariably (or almost invariably) lead to site remediation, but, if they do, there is no designated evidence to that effect.

10

forth their respective positions in the legal arena.

*Miller*, 463 N.E.2d at 265-66.

Because we have already concluded that the question of unreasonably late notice must go to a jury, so too must the question of prejudice. If the jury finds that Koors's notice was unreasonably late, prejudice will be presumed. Farm Bureau will then have the opportunity to rebut that presumption at trial. Harleysville is not entitled to summary judgment on the question of unreasonably late notice.

### III.  Pollution Exclusion

Finally, Farm Bureau contends that the pollution exclusion in Harleysville's policies with Koors does not excuse Harleysville from its duty to defend and indemnify, while Harleysville contends that it does. This requires us to determine if gasoline can be considered a "pollutant" under Harleysville's policies. As the Indiana Supreme Court has noted,

> The interpretation of insurance policies is not a new task for this Court. *See, e.g., Glens Falls Ins. Co. v. Michael*, 167 Ind. 659, 74 N.E. 964 (1905). Where there is ambiguity, insurance policies are to be construed strictly against the insurer. *Fidelity and Deposit Co. of Maryland v. Pettis Dry Goods Co.*, 207 Ind. 38, 190 N.E. 63 (1934). This is particularly true where a policy excludes coverage. *See Asbury v. Indiana Union Mut. Ins. Co.*, 441 N.E.2d 232, 242 (Ind. Ct. App. 1982). This strict construal against the insurer is driven by the fact that the insurer drafts the policy and foists its terms upon the customer. "The insurance companies write the policies; we buy their forms or we do not buy insurance." *American Economy Ins. Co. v. Liggett*, 426 N.E.2d 136, 142 (Ind. Ct. App. 1981).

*Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996), *reh'g denied*.

In *Kiger*, the Indiana Supreme Court interpreted a pollution exclusion with language

literally identical to that in Harleysville's policies and concluded that gasoline was not a "pollutant" under the policy. *Id*. at 949. The *Kiger* court noted that "since the term 'pollutant' does not obviously include gasoline and, accordingly, is ambiguous, we once again must construe the language against the insurer who drafted it" and concluded that "[i]f a garage policy is intended to exclude coverage for damage caused by the leakage of gasoline, the language of the contract must be explicit." *Id*. at 949. Because the language of the pollution exclusion at issue here is identical to that at issue in *Kiger*, so is our holding. Harleysville is not entitled to summary judgment on the basis that the pollution exclusion applies to gasoline leaks.

The judgment of the trial court is reversed and we remand for further proceedings not inconsistent with this opinion.

KIRSCH, J., and BARNES, J., concur.