SULLIVAN, Justice,
dissenting.
The Court holds that American States Insurance Co. v. Kiger, 662 N.E.2d 945 (Ind.1996), demands that the pollution exclusion found in most general liability insurance policies be ignored. I respectfully dissent.
A few days ago, Judges Richard A. Pos-ner, Diane P. Wood, and David F. Hamilton, joined in a decision enforcing a pollution exclusion in a case for all relevant purposes the same as this. Scottsdale Indem. Co. v. Vill. of Crestwood, 673 F.3d 715 (7th Cir.2012). Their decision is worthy of review here, both for its clarity and applicability.
*853 At issue in the Crestwood case was whether “the pollution exclusion ... found in most general liability insurance policies” — essentially the same exclusion in essentially the same form policy at issue here — was triggered by tort complaints alleging contamination of a well by a substance called “perc” (perchloroethylene, also known as tetrachloroethylene). Id. at 715-16.
Crestwood uses the hypothetical situation of a tanker truck crashing and spilling perc, upon which another vehicle skids and crashes. Although perc is a pollutant, the Court says, “it would be absurd to argue ... that a claim arising from such an accident would be within the pollution exclusion, since in no reasonable sense of the word ‘pollution’ was the driver a victim of pollution.” Id. at 717.
In Kiger, Justice DeBruler used the example of a gas station customer’s slip on a gasoline or grease spill to make the same point: that the pollution exclusion could not deny “coverage for a large segment of the gas station’s business operations.” 662 N.E.2d at 948^9. This only makes sense because, as Crestwood says, “a literal reading of the pollution exclusion would exclude coverage for acts remote from the ordinary understanding of pollution harms and unrelated to the concerns that gave rise to the exclusion.” 673 F.3d at 717 (citations omitted).
“The business of insurance is covering losses,” the Seventh Circuit judges say in Crestwood, “but this is provided the company can estimate within a reasonable range the size of the losses that it is likely to be required to reimburse the policyholders for. Otherwise it can’t set premiums that will be high enough to compensate it for the risk of having to reimburse the losses it’s insuring, without being so high that no one will buy its policies.” Id. “Environmental damage is often very difficult to detect until it has become extensive, let alone to predict, or estimate its likely extent, in advance; and the financial consequences can be horrific but again are unpredictable.” Id. at 718.
The pollution exclusion, therefore, allows a business to buy insurance to protect it from ordinary tort liability (the truck crash or the grease spill) without having to pay an additional premium amount necessary to provide coverage to those enterprises with a high risk of polluting in the ordinary sense — contaminating wells, for example.
All of this conforms to our jurisprudence — at least until today’s case. Kiger dealt with the treatment of gasoline at a gas station under a garage policy. To hold gasoline a “pollutant” under the policy would have “provided no coverage for a large segment of the gas station’s business operations.” Kiger, 662 N.E.2d at 949. To the same effect were the toxic fumes from substances used to install carpet in an office building at issue in Freidline v. Shelby Insurance Co., 774 N.E.2d 37 (Ind.2002). Like sickness caused by paint fumes or fumes leaking from a defective fluorescent light fixture, the harm in Freidline was “remote from the ordinary understanding of pollution harms and unrelated to the concerns that gave rise to the exclusion.” 673 F.3d at 717 (citations omitted).
Here, by contrast, trichloroethylene (TCE) was discovered contaminating the soil and groundwater both on and off the site of Flexdar’s rubber-stamp and printing-plate manufacturing facility in Indianapolis. This obviously meets “the ordinary understanding of pollution harms” *854 and is clearly related “to the concerns that give rise to the exclusion.” In point of fact, Flexdar’s business is based on neither the sale nor the storage of trichloroethy-lene; enforcing the exclusion in no way deprives Flexdar of coverage for its exposure to the ordinary tort risks of its business.
Kiger has never before stood for the proposition that all pollution exclusions are unenforceable. Today’s case moves Indiana law in that direction. The immediate consequence will be premium increases as insurers seek to charge for the increased risks that the Court today requires them to cover. Hoosier businesses who have little risk of being sued for polluting will face a Hobson’s choice: paying higher premiums for coverage they don’t need, thereby dissipating their financial resources, or going without coverage, thereby exposing themselves to risk of loss from ordinary tort liability.
I also observe that in addition to the factual differences between this case and Kiger, the policy language differs as well. The policy in this case (but not in Kiger) contains a “business operations endorsement,” expressly providing that the pollution exclusion “applies whether or not such irritant or contaminant has any function in your business, operations, premises, site or location.” Appellant’s App. 989. In another case, the Seventh Circuit found that this endorsement “buttressed” its conclusion that a pollution exclusion was enforceable. W. Bend Mut. Ins. Co. v. U.S. Fid. & Guar. Co., 598 F.3d 918, 923 (7th Cir.2010) (Indiana law).
I would reverse the trial court’s decision and find in favor of the insurer.
SHEPARD, C.J., joins.